2024 IL App (1st) 240516-U

No. 1-24-0516B

Filed June 6, 2024

Fourth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.    22 CR 13201 |
| | ) |          24 CR 914 |
| | ) | |
| FRANK WYNNE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concur in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court's order continuing defendant's detention at an appearance subsequent to his denial of pretrial release affirmed.

¶ 2    Frank Wynne appeals the circuit court's order continuing his detention. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Wynne was charged with various firearm related offenses after his arrest on December 29, 2023. Later that day, he appeared before a judge of the Pretrial Division of the First Municipal

District of the Cook County Circuit Court, commonly referred to as First Appearance Court,[1] where the State filed a verified petition to deny pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).

¶ 5        Following a hearing on the State's petition, the court ordered Wynne detained.[2] The court's written order stated the State had shown by clear and convincing evidence the three propositions required by section 110-6.1 to detain a defendant before trial: (1) the proof was evident and the presumption great that the defendant had committed a detainable offense, (2) the defendant poses a real and present safety threat, and (3) no condition or combination of conditions can mitigate that threat. See *id*. § 110-6.1(e)(1)-(3). Regarding the first proposition, the court added "[Wynne] had a loaded gun [with] an extended magazine in plain view in the back seat of his car." For the second proposition, the court wrote, "[Wynne] fled from police – hit a civilian in her car – didn't stop, and when finally stopped had a loaded 9mm [with extended] mag[azine] in his car." On the last proposition, the court stated, "[Wynne] has had back to back felony convictions since 2011. He has violated probation and one probation was term[inated] unsatis[factory]. He is on probation now. This offense represents an escalation as most [prior offenses] were drug related."

¶ 6        Subsequently, the State filed a petition for violation of probation (VOP) related to Wynne's earlier 2022 conviction for possession of a controlled substance (PCS). On January 2, 2024, the circuit court entered an order detaining Wynne for the VOP in his 2022 PCS case.[3] The court used the same template detention order the First Appearance Court used to detain Wynne on December 29. The order indicates Wynne appeared in person. Instead of a finding that Wynne was

---

[1]Formerly referred to as bond court.
[2]Neither the State's petition to deny pretrial release nor a transcript of the December 29, 2023, hearing appear in the record on appeal.
[3]No petition or transcripts from this proceeding appear in the record.

charged with a detainable offense under section 110-6.1, though, the court cited section 110-6[4] and wrote, "VOP clear and convincing evidence that [Wynne] might be arrested for a new matter and no conditions can mitigate."

¶ 7    The firearm charges were later superseded by indictment or information, which included a count of armed habitual criminal (AHC). The case was transferred to the Criminal Division before the same judge presiding over Wynne's VOP case. Wynne filed a "Petition for Release from Detention under 725 ILCS 5/110-1 *et seq.*" on February 20, 2024. Wynne's petition requested that he be released on both the AHC and VOP cases.

¶ 8    In his petition, Wynne argued that the evidence was too weak to "support his continued detention." He asserted that evidence would show he was taken hostage at gunpoint by a passenger in his vehicle who forced him to flee from police. Before he fled on foot, according to Wynne, the passenger tossed the firearm into the back seat where it was later recovered. Wynne's petition cited his employment and family circumstances to support his contentions that he did not pose a danger or flight risk.

¶ 9    Wynne appeared before the court on February 22 for a hearing on his petition. At the outset, the State amended its earlier filed detention petition to add the allegation that Wynne poses a risk of willful flight. Defense counsel argued that the evidence did not support Wynne's continued detention since he was taken hostage at gunpoint and forced to flee. The recovered firearm was the passenger's, not Wynne's, and Wynne informed police officers he had been held hostage. Further, the vehicle was not registered to him, and no additional evidence connected Wynne to the firearm. For those reasons, counsel submitted, the State could not prove Wynne actually or constructively possessed the firearm. Counsel went on to describe Wynne's education and employment history.

---

[4]Section 110-6 of the Code pertains to revocation of pretrial release and violations of conditions of pretrial release. 725 ILCS 5/110-6 (West 2022).

At the time of his arrest, Wynne had been working at a factory for over a year and had prospects for promotion. The company indicated Wynne could return to work if he were released. In addition, Wynne would be residing with his fiancée and their two children. Counsel further reported that Wynne has medical issues stemming from gunshot wounds he sustained the previous year. Although Wynne was on probation and had prior criminal convictions, Wynne had no history of violence. Thus, counsel argued that Wynne did not pose a safety or flight risk and conditions such as electronic monitoring would suffice if Wynne were released.

¶ 10    The State responded that there had been a preliminary hearing in the AHC case, where the arresting officers testified and neither their testimony nor written reports contained evidence supporting the claim that Wynne had been taken hostage. Rather, officers observed a vehicle solely occupied by Wynne when they attempted to initiate a traffic stop. Wynne sped away and entered an expressway, where he struck another vehicle. He fled from the scene of that collision and crashed a second time, a short distance away. No other person was observed riding in or exiting Wynne's vehicle. A loaded handgun with an extended magazine was found on the rear seat. At the scene, Wynne made statements about being taken hostage, but gave no specifics, such as a description of the person or how it occurred. Based on the proffered allegations and Wynne's criminal history, the State argued "it's proper he remains detained at this time."

¶ 11    Defense counsel replied that video from police vehicles and body worn cameras, which may corroborate Wynne's claim, was not available yet. In addition, Wynne was now naming the other individual, whom he had picked up before "things kind of went awry." Counsel further stated that property belonging to the other individual was recovered from the vehicle.

¶ 12    The court found that Wynne was eligible for detention since he was charged with AHC, and the State had shown by clear and convincing evidence that the proof was evident and the

presumption great that Wynne had committed the offense. The court cautioned that the finding was not binding for trial. The court next found that Wynne posed a danger to the community as shown by his eight prior felony convictions and the recovery of a handgun with an extended magazine. As for whether conditions could mitigate the risk, the court noted that Wynne had been "through the criminal justice system several times" and was on probation at the time of the charges in this case. Based on his criminal history and the high speed chase in this case, the court found that no conditions of release would be adequate. The court specifically noted that electronic monitoring and a curfew would be inadequate in light of Wynne's background. However, the court stated that it did not find Wynne to be a flight risk. Ultimately, the court ruled that "[d]etention will continue." The court's written order likewise stated that Wynne's detention was to continue.

¶ 13        Wynne filed a timely notice of appeal using the template form approved for such appeals. Wynne checked the boxes to assert that the State failed to meet its burden to prove each of the three propositions. In the spaces provided to elaborate, Wynne echoed his arguments from the hearing that he was taken hostage, he does not have a violent history, and electronic monitoring would be a sufficient condition of release. Wynne also checked the box to assert that the court erred in determining that no conditions of release would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or class A misdemeanor. In the space provided, Wynne only addressed conditions that would ensure future court appearances.

¶ 14        Wynne filed a memorandum in lieu of a brief, as permitted by Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023). His memorandum reiterates his arguments before the circuit court. The State filed a reply memorandum arguing that it had made the requisite showing to detain Wynne before trial.

¶ 15                                    II. ANALYSIS

¶ 16         At the outset, we observe that the February 22 hearing seemed to conflate an initial detention hearing under section 110-6.1(f) of the Code with the requirement of subsection (i-5) to determine the necessity of continued detention at subsequent appearances. See 725 ILCS 5/110-6.1(i-5) (West 2022). Both Wynne and the State acknowledged that Wynne was previously ordered detained. Wynne's petition and arguments were couched in terms of whether the evidence supported his "continued detention," and the State argued it was proper he "remains detained." Similarly, the court ultimately ruled that Wynne's detention would "continue." Thus, the parties and court, at times, acted consistent with a continued detention determination under subsection (i-5).

¶ 17         At the same time, however, the State moved to amend its previously filed petition to deny pretrial release, even though that petition had already been granted. For his part, Wynne made arguments directed at the three propositions the State must prove to initially detain a defendant, even though the Pretrial Division judge already determined the State had proven those propositions. The court made findings as to each of the three propositions as well. Thus, Wynne's petition for release was treated, in part, as though it reopened the initial detention proceeding on the State's petition filed under section 110-6.1.

¶ 18         The Code does not provide for repeated, comprehensive detention hearings. The State's petition to deny pretrial release pursuant to section 110-6.1 was heard and ruled upon in the Pretrial Division on December 29. Wynne was ordered detained at that time. The court's December 29 order was appealable. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Dec. 7, 2023). When the case was transferred to the Criminal Division, the transfer did not require or permit a repetition of a section 110-6.1 detention hearing. We are cognizant that Cook County differs from most circuit courts in Illinois

where a defendant generally appears before the same judge throughout their case. In Cook County, a defendant charged with a felony often appears before two different judges. Like here, a defendant may appear before one judge on a felony charge before the filing of an indictment or information and a different judge afterward. While it may be practically necessary to repeat information proffered before the first judge to familiarize the second judge with the case, the second judge need not repeat the first judge's task and redetermine whether the State made the requisite showing to detain the defendant.

¶ 19    The Code expressly differentiates between subsequent appearances and an initial detention hearing. For detained defendants, "the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. Rather, at every subsequent appearance, the trial court must make a finding whether "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). "Notably, this portion of the Code, unlike the portions dealing with petitions for detention, does not prescribe a quantum of evidence or place a burden of proof on any party." *People v. Mansoori*, 2024 IL App (1st) 232351, ¶ 18. Further, subsection (i-5) requires the court to make the determination at each subsequent appearance. "This determination also does not contemplate the filing of a petition for detention." *Id.*

¶ 20    Here, Wynne's arguments on appeal are directed at the three propositions the State must prove by clear and convincing evidence at an initial detention hearing. But since the Pretrial Division judge previously determined the State proved those propositions on December 29 and he did not appeal that order, those issues are not properly before us. See *Casey*, 2024 IL App (3d)

230568, ¶ 13 (finding issues regarding the three propositions were not before the court when defendant only appealed his continued detention following a subsequent appearance).

¶ 21        We note that the State's apparent acquiescence to a new section 110-6.1 detention hearing and the court's findings consistent with such a hearing did not render the proceeding a proper detention hearing. Since no verified section 110-6.1 petition—which is required to validly conduct such a hearing—was pending before the court, the proceedings were a nullity insofar as they replicated an initial detention hearing. See *People v. Shockley*, 2024 IL App (5th) 240041, ¶ 18 ("no provision within [the Code] permits a circuit court to *sua sponte* consider the denial of pretrial release absent the filing of a verified petition as required by section 110-6.1(a).").

¶ 22        The only issue properly before the trial court on February 22 was whether Wynne's continued detention was necessary to avoid a safety threat or prevent his willful flight. Although Wynne was not permitted to relitigate his initial detention, the Code did not prevent him from challenging whether his continued detention was necessary.[5] The court couched some of its findings in terms of an initial detention determination but ultimately found that Wynne's detention would continue since he posed a safety risk. Thus, the court's ruling is consistent with a subsection (i-5) finding that Wynne's continued detention was necessary to avoid a real and present safety threat.

¶ 23        Wynne's appeal does not challenge whether his continued detention was necessary to avoid a safety threat. Therefore, Wynne has failed to put the matter before us for review. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (observing that appellate review under Rule 604(h) is

---

[5]Subsequent to the trial court proceedings in this case, Rule 604(h) was amended to require a defendant to file a motion for relief in the trial court as a prerequisite to appeal. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Following the amendment, a defendant may challenge prior detention orders in the trial court through a motion for relief.

limited to the arguments raised in the notice of appeal and, if filed, included in the appellant's memorandum).

¶ 24                              III. CONCLUSION

¶ 25          Based on the foregoing, we affirm the judgment of the circuit court.

¶ 26          Affirmed.