2024 IL App (1st) 240730-U

No. 1-24-0730B

Order filed July 12, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| | ) | No. 2023CR1051501 |
| LETERRANCE MITCHELL, | ) ) | |
| | ) | The Honorable Sharon Arnold |
| Defendant-Appellant. | ) | Kanter (in the stead of the |
| | ) | Honorable Shelley Sutker- |
| | ) | Dermer), |
| | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Hyman concurred in the judgment. Justice Tailor dissented.


**ORDER**

¶ 1   *Held:*   The circuit court abused its discretion where it did not properly consider electronic home monitoring as a viable alternative to continued pretrial detention.

¶ 2     Appellant Leterrance Mitchell appeals the circuit court's order continuing his pretrial detention under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), and Public Act 102-1104, § 70 (eff. Jan 1, 2023) (commonly referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" (Act)). On appeal, Mitchell argues the court erred in its determination that there was no condition or combination of conditions that would reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor. For the following reasons, we reverse and remand for the circuit court to consider whether electronic monitoring is appropriate with the understanding that Mitchell will be monitored even on days where he is allowed movement pursuant to the Electronic Monitoring and Home Detention Law (Electronic Monitoring Law). 730 ILCS 5/5-8A *et. seq.* (West 2022).

¶ 3                                                    BACKGROUND

¶ 4     Mitchell was arrested on August 27, 2023, and charged with two counts of possession and display of a fraudulent identification card (15 ILCS 335/14B(b)(2)) (West 2022)). The circuit court released Mitchell on a $4000 bond with additional pretrial release conditions on September 2, 2023. Following the enactment of the Act on September 18, 2023, on October 20, 2023, Mitchell was arrested for aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a) (West 2022)). On October 21, 2023, the State filed a petition to revoke pretrial release under section 110-6 of the Code. The court granted the petition on November 2, 2023, and ordered Mitchell detained. Mitchell filed a petition seeking pretrial release under section 110-6.1 of the Code on February 14, 2024, and the court held a hearing on the petition the same day.

¶ 5     The State proffered that on October 20, 2023, Chicago police officers pulled over a driver in the 6300 block of South Martin Luther King Drive in Chicago. At the time, the driver was

providing rideshare services to Mitchell, who was seated in the passenger seat behind him. The officers observed Mitchell acting nervous and asked if he was concealing anything. After Mitchell evaded their questions, the officers asked both Mitchell and the driver to exit the vehicle. Mitchell exited out of the opposite side of the vehicle and fled on foot. The officers chased down and detained Mitchell. They returned to the vehicle and allegedly found a loaded firearm on the rear seat. At the time of the arrest, Mitchell did not have a Firearm Owners Identification (FOID) card or concealed carry (CCL) permit.

¶ 6    The State noted at the time of the arrest, Mitchell was on first-time weapon offender probation after he pled guilty to AUUW on March 7, 2023. Mitchell violated his probation when he was arrested in August 2023. The State argued because Mitchell was arrested twice in a short time, and his October arrest was his second while on probation, there was no condition or combination of conditions that would reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 7    Mitchell proffered that at the time of the hearing, he was 19 years old and a lifelong resident of Chicago. He graduated from South Shore International College Preparatory High School and worked at UPS at the time of his arrest. Mitchell requested the court grant pretrial release so he could return to his family and work with his counsel as the case continued. He argued electronic monitoring would be appropriate because the court could monitor when and where he would be at all times.

¶ 8    The court denied Mitchell's petition, finding no condition or combination of conditions would reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor. The court stated:

"I don't believe that being on electronic home monitoring, which I did strongly consider, would prevent this defendant from committing any other offense because the defendant has shown to me he fled the car in which - - and I'm not taking that fraudulent ID case very much into my consideration except committing the offense. Electronic home monitoring is just a bracelet on someone's ankle. The electronic home monitoring [statute] allows for two separate days where people would not be on electronic home monitoring where people are not being monitored. I don't think - - I think with the defendant being on probation, being on bond, and then committing this third case, I don't think there's anything that I can do."

This appeal followed.

¶ 9                                              JURISDICTION

¶ 10    Mitchell appeals the circuit court's order of February 24, 2024[1]. He filed his notice of appeal on February 28, 2024; thus, the notice was timely, and this court has jurisdiction. See 725 ILCS 5/110-6(a), 110-6.6 (West 2022); Ill. S. Ct. R. 604(h) (eff. Dec. 7, 2023).

¶ 11                                              ANALYSIS

¶ 12    Upon its enactment, the Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 17. Any person previously released on bond shall be allowed to remain on pretrial release under the terms of their original bail bond; however, if there is an alleged

---

[1] On his Notice of Appeal, Mitchell states to appeal the order entered "February 24, 2024." However, the record does not show an order entered by the circuit court on that date. The circuit court entered its order continuing Mitchell's detention on February 14, 2024. The notice incorporates the court's findings from its February 14, 2024, order. As such, we find this defect to be one of form and not fatal on appeal. *See People v. Hayes*, 2022 IL App (1st) 190881-B, ¶ 17.

4

violation of those terms, the court shall follow the procedures for revocation of pretrial release under section 110-6 of the Code. 725 ILCS 5/110-7.5(a), (c)(5) (West 2022).

¶ 13    Under section 110-6(a) of the Code, when a defendant has previously been granted pretrial release, it may be revoked only if he is charged with a felony or Class A misdemeanor that is alleged to have occurred during his pretrial release. 725 ILCS 5/110-6(a) (West 2022). The defendant's pretrial release may only be revoked after a hearing on the circuit court's own motion or upon the filing of a verified petition by the State. *Id.*

¶ 14    Following revocation, at each subsequent appearance of the defendant before the circuit court, the court must find that continued detention is necessary to reasonably ensure the appearance of the defendant for later hearings or to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. 725 ILCS 5/110-6(j) (West 2022).

¶ 15    The applicable standard of review for orders revoking pretrial release under section 110-6 of the Code is the same as orders denying pretrial release under section 110-6.1. *People v. Green*, 2024 IL App (1st) 240211, ¶ 33. While the standard of review for pretrial release orders remains unsettled, this court determined a "twofold" approach is appropriate where the circuit court's findings of fact are reviewed under the manifest weight of the evidence standard, but the ultimate decision regarding pretrial detention is reviewed for abuse of discretion. *People v. Castillo*, 2024 IL App (1st) 232315, ¶¶ 17-18.

¶ 16    At the outset, we observe that the circuit court, during the February 14, 2024, hearing, seemed to conflate a hearing to revoke pretrial release under section 110-6(a) of the Code with a subsequent appearance under section 110-6(j). In its oral ruling, the court stated that along with Mitchell's petition for pretrial release, there was "a previous verified petition [to revoke] by the State." The court proceeds to find by clear and convincing evidence that no condition or

combination of conditions would reasonably prevent Mitchell from being charged with a subsequent felony or Class A misdemeanor. This is the standard for an initial revocation hearing outlined in section 110-6(a) of the Code. However, the legislature is clear that an initial revocation hearing occurs upon the filing of a verified petition by the State or on the court's own motion. 725 ILCS 5/110-6(a) (West 2022).

¶ 17   Here, the circuit court had already heard and adjudicated the State's petition on November 2, 2023, and in doing so, the court found by clear and convincing evidence that "no condition or combination of conditions of release would reasonably *** prevent the defendant from being charged with a subsequent Felony or Class A Misdemeanor." Because Mitchell appeared before the court after it adjudicated the State's petition, the February 14, 2024, hearing was a "subsequent appearance" under section 110-6(j) of the Code.

¶ 18   We find the analysis in *People v. Wynne*, 2024 IL App (1st) 240516-U, ¶ 21, instructive. In *Wynne*, the court ordered a defendant detained after the State filed a petition to deny pretrial release. *Id*. ¶ 4-5. Following the hearing, the defendant filed a petition for pretrial release. *Id*. ¶ 7. At the hearing on the defendant's petition, the circuit court found that the State met its evidentiary burden for detention under section 110-6.1 of the Code and ruled that the defendant's detention would continue. *Id*. ¶ 12.

¶ 19   On appeal, the *Wynne* court noted the Code expressly differentiates between an initial detention hearing and a subsequent appearance. *Wynne*, 2024 IL App (1st) 240516-U, ¶ 19. The court explained that even though the circuit court made findings consistent with the standard for initial detention, those findings were improper as there was no verified petition for detention pending, as is required under section 110-6.1. *Id*. ¶ 21. The court concluded that any proceedings for an initial detention hearing at a subsequent appearance were a nullity. *Id*. ¶ 21. The only issue

at a subsequent appearance is whether continued detention was necessary under the Code. *Id*. ¶ 22. However, if the circuit court ultimately found that continued detention was necessary, then its ruling would be consistent with the subsequent appearance standard, even if it couched its findings in terms of an initial detention determination. *Id.*

¶ 20    Here, the circuit court found detention was necessary because it had a mistaken belief regarding electronic home monitoring. Therefore, the issue here is whether the circuit court properly considered electronic home monitoring a viable alternative to continued detention.

¶ 21    We note that at the February 14, 2024, hearing, Mitchell informed the circuit court that he had been detained between October 2023 and February 2024, and he assured the court he would "walk a straighter line" upon release. He highlighted his age and contented alleged flight from police during the October 2023 incident was due to his immaturity. Mitchell asked to be placed on electronic home monitoring emphasizing that electronic monitoring provides more restrictions on movement than pretrial release. Upon questioning from the court, the State noted that prior to the October 2023 incident, Mitchell did not have any issues while he was on pretrial release.

¶ 22    In its ruling, the circuit court stated that it "strongly" considered electronic monitoring but rejected it as it allowed for "two separate days where . . . people are not being monitored." Because of these two days where Mitchell would not be monitored, and considering the October 2023 incident occurred while he was on probation, the court ruled there were no lesser conditions to prevent him from committing a subsequent felony or Class A misdemeanor. But the court's finding of there being "two separate days where . . . people are not being monitored" is an incorrect interpretation of the Electronic Monitoring Law.  In construing a statute, this court must ascertain and give effect to the intent of the legislature. *In re J.W.*, 204 Ill. 2d 50, 62 (2003). To determine the legislature's intent, the reviewing court must first examine the language of the statute, which

7

is the most reliable indicator of its intent. *Id*. If the statutory text is clear and unambiguous, it should be given effect as written, without reading into it, exceptions, limitations, or conditions that the legislature did not express. *People v. Sevedo*, 2017 IL App (1st) 152541, ¶ 22. The construction of a statute is a question of law, reviewed *de novo*. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995 ¶ 5. Under the Electronic Monitoring Law, "at a minimum, any person ordered to pretrial home confinement with or without electronic home monitoring must be provided with movement spread out over no fewer than two days to participate in basic activities." 730 ILCS 5/5-8A-4(A-1) (West 2022). The statute limits "basic activities" to those listed under 730 ILCS 5/5-8A-4(A). *Id.* The activities include:

> "(1) working or employment approved by the court or traveling to or from approved employment;
> (2) unemployed and seeking employment approved for the participant by the court;
> (3) undergoing medical, psychiatric, mental health treatment, counseling, or other treatment programs approved for the participant by the court;
> (4) attending an educational institution or a program approved for the participant by the court;
> (5) attending a regularly scheduled religious service at a place of worship;
> (6) participating in community work release or community service programs approved for the participant by the supervising authority;
> (7) for another compelling reason consistent with the public interest, as approved by the supervising authority; or
> (8) purchasing groceries, food, or other basic necessities."

¶ 23   While section 5-8A-4(A-1) may allow a defendant two days to conduct basic activities outside of his residence, it does not state that the defendant is "not being monitored." We find that section 5-8A-4(D) requires a defendant to be monitored "at any time" for the purpose of verifying compliance with electronic home monitoring. 730 ILCS 5/5-8A-4(D) (West 2022). In addition, the defendant must maintain access to a working telephone and a monitoring device either in his home or on his person. *Id.* § 5-8A-4(E). While a defendant has two days to attend places such as a doctor's appointment or a religious service, which may be outside of the locations specifically

8

listed in his electronic monitoring order, he must still maintain communication with the agency who is managing the program. Reading the plain and unambiguous language of the statute, the legislature did not intend for defendants on electronic monitoring to have two days where they are not monitored. We find that under section 5-8A-4(A-1), while a defendant must have two days where he may move from his residence, his movement is limited to the "basic activities" listed in section 5-8A-4(A).

¶ 24     Given our interpretation of the Electronic Monitoring Law, we hold the circuit court erred in finding that "electronic home monitoring allows for two separate days where people would not be on electronic home monitoring where people are not being monitored." We also hold that the court abused its discretion in finding, "I don't think there's anything that I can do and any least restrictive condition that would prevent this defendant from committing yet another subsequent felony or class A misdemeanor."

¶ 25     The issue before this court is not whether electronic monitoring will or will not be effective, instead the issue is whether the circuit court properly considered electronic monitoring as an alternative to detention as required by the Code. The dissent asserts that the court found that electronic monitoring would be ineffective due to Mitchell's history. But instead, the court found electronic monitoring ineffective because it misinterpreted the Electronic Monitoring Law. According to the record, Mitchell was never placed on electronic monitoring. The court mistakenly believed that Mitchell would have two days where he would not be monitored, similar to his prior pretrial release. Because of this mistaken belief, the court found that no "least restrictive condition. . . would prevent [Mitchell] from committing yet another felony or Class A misdemeanor." As previously stated, under electronic monitoring, Mitchell would always be monitored.

¶ 26    Because the circuit court mistakenly believed that electronic home monitoring would allow "two separate days where . . . people are not being monitored," it did not properly consider electronic monitoring as an alternative to detention as required. Based on the court's comments, the court misunderstood the law, and that cannot be ignored. Therefore, we reverse and remand for the court to consider the effectiveness of electronic monitoring. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 31 ("Error is committed when a trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented" (citing *People v. Queen*, 56 Ill. 2d 560, 565, (1974)).

¶ 27    Finally, we echo the words of the circuit court, and note that we see much potential within Mitchell. We note the immaturity that may arise from a 19 year old such as Mitchell, and hope that at the end of this process, he turns his life around, continues his education, and reaches his full potential. We remand this matter and take no position on what the ruling of the circuit court should be.

¶ 28                                   CONCLUSION

¶ 29    We reverse the circuit court's February 14, 2024, order and remand for the court to reconsider whether Mitchell should be placed on electronic home monitoring.

¶ 30    Reversed and remanded.

¶ 31    JUSTICE TAILOR, dissenting:

¶ 32    The trial court did not abuse its discretion when it determined that continued detention was necessary to prevent Mitchell from being charged with a subsequent felony or Class A misdemeanor. To support its determination, the court noted that Mitchell had been placed on "first offender gun probation" after pleading guilty to AUUW on March 7, 2023. Less than six months later, Mitchell was arrested again and charged with possession of multiple fraudulent or fictitious

10

identification cards. The court noted that the probation judge could have held Mitchell for violating the terms of his probation at that time, but instead "decided to place [his] trust [in Mitchell] that he would do what was asked, but most importantly, *** not commit any new cases." Mitchell was granted bond on September 2, 2023, but was arrested again less than two months later after a 9-millimeter semiautomatic loaded firearm was found on the seat of a vehicle where he had been sitting just minutes after he exited the vehicle and fled from police. He was then charged with AUUW, his second gun offense. After reviewing Mitchell's criminal history, the court stated:

> "So what I have before me is an individual who was on gun probation, picked up a new case, a new Class 4 felony, was given the immense trust to be released on that bail on that Class 4 felony, and then flaunted that trust of the community and committed another gun case merely 48 days after being released on *** bond. Why I believe that there are no conditions or combination of conditions that would reasonably prevent this defendant from being charged with a subsequent felony or Class A misdemeanor is that the defendant was on probation for a gun and then picked up two new cases."

The court went on:

> "The defendant was released on the first case, given that opportunity to show the Court again that he would not be charged with a subsequent felony or Class A misdemeanor, that he could be trusted to be amongst the community and follow the rules as were required not only by his probation but by his bond slips, and then 48 days later picked up not just any Class 4 felony but a gun case with a 9-millimeter semiautomatic handgun."

¶ 33    After stating that it had "strongly consider[ed]" electronic home monitoring, the court determined that it would not prevent Mitchell from committing any other offense because he had "flaunted th[e] trust" the court had placed in him and repeatedly demonstrated that he "didn't

follow the rules." The majority singles out the court's comment that "electronic home monitoring allows for two separate days where people would not be on the electronic home monitoring where people are not being monitored" and concludes that this demonstrates the court's "incorrect interpretation of the Electronic Monitoring and Home Detention Law" as well as the court's belief that Mitchell would not be monitored at all for two days each week. However, I read the court's comments as evincing its belief that if Mitchell was placed on electronic monitoring, he would be permitted to leave the home and go out into the community two days out of every week, where he would be likely to reoffend. When the record is read as a whole, it is clear that the court considered electronic monitoring as an option for Mitchell but rejected it, not because of any misunderstanding of the law, but due to Mitchell's demonstrated unwillingness to comply with court rules and orders. The court noted that Mitchell had already been given probation and been released on bond, and that as a condition of that bond, he had been required not to commit any additional criminal offenses, and yet he reoffended less than two months later. Accordingly, I find that the majority's conclusion—that the trial court "believed that electronic home monitoring was not an option"—is belied by the record. Ample evidence in the record supported the court's decision to continue to detain Mitchell here, including his previous history of violating and disobeying court orders and reoffending while on probation and on bond. Therefore, I would find no abuse of discretion and would affirm the trial court's order.

¶ 34    I respectfully dissent.