2025 IL App (1st) 242490-U

No. 1-24-2490B

First Division
April 21, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 24 CR 6865 |
| | ) | |
| JALEN SMITH, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in granting the State's petition to deny pretrial release or in subsequently denying defendant's motion for relief where the court properly determined that no condition or combination of release conditions would be sufficient to ensure public safety.

¶ 2   Defendant Jalen Smith appeals the circuit court's order denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), and Public Act 102-1104, § 70

(eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Specifically, defendant contends that the circuit court erred in determining that there was no condition or combination of conditions that would mitigate the danger his pretrial release would pose to the public. Defendant also contends that the court erred in denying his subsequent motion for relief for the same reasons. We now affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On June 23, 2024, defendant was arrested and charged with aggravated battery involving the discharge of a firearm, attempted armed robbery, and aggravated unlawful use of a weapon. The next day, the State filed a petition for a pretrial detention hearing, contending that defendant posed a real and present threat to the safety of the community.

¶ 5      At the detention hearing, the State proffered that on June 23, 2024, the victim was selling laundry detergent from tables he set up outside his apartment building. At approximately 4:16 pm, defendant approached the victim from behind and stuck an object that "felt like a gun" into the victim's back. Defendant then lowered the mask he was wearing and demanded that the victim "give him everything that he had." As defendant reached for the victim's pockets, the victim ran toward the apartment building. Defendant shot twice at the victim as he ran, grazing him in the "leg and foot area." According to the victim's statement, defendant had his hand inside his backpack as he fired. Defendant attempted to follow the victim into the building, but the victim was able to push defendant away and slam the door closed. Defendant then fled on foot.

¶ 6      After defendant fled, the victim flagged down a passing police vehicle and reported that he had just been robbed. The officers pursued defendant and, after a brief foot chase, located him in a nearby gangway "attempting to blend in with surrounding bushes and plants." The police also recovered a black mask, a handgun with a spent shell casing in the chamber, and a backpack with

a hole in it from the area where the chase occurred. The victim identified defendant as the person who attempted to rob him.

¶ 7      The State further proffered that defendant's criminal history included a 2020 felony conviction for possession of a firearm and a 2017 juvenile adjudication for robbery. Defendant's term of probation in the robbery case was terminated unsatisfactorily.

¶ 8      The State argued that the proof was evident that defendant committed a detainable offense, that defendant posed a real and present threat to the safety of the community, and that no condition or combination of release conditions would be sufficient to mitigate that threat. In particular, the State submitted that no release conditions short of detention would be sufficient because defendant shot the victim during the offense. The State also noted that defendant illegally possessed a firearm in this case despite a 2020 felony conviction for firearm possession. The State further argued that "[e]lectronic monitoring allows two days of unrestrictive movement and is not appropriate in this case." Accordingly, the State asked that defendant be detained.

¶ 9      The defense argued, among other things, that there were less restrictive means than detention to quell any danger to the public. For example, defense counsel contended that the victim could be protected by placing defendant on a GPS with a 24-hour curfew and no movement. Counsel also argued that electronic monitoring was appropriate because it "limits the movement severely and gives Sheriffs permission essentially to go into his home at any time without notice [.]"

¶ 10      After hearing arguments, the circuit court found that the State proved by clear and convincing evidence that defendant committed a detainable offense, that defendant posed a real and present threat to the safety of the community, and that no condition or combination of conditions would be sufficient to mitigate the danger posed by defendant. As to release conditions,

the court noted that defendant had a history of illegally possessing firearms and had terminated his juvenile probation unsatisfactorily. The court rejected defense counsel's suggestions of GPS or electronic monitoring, opining that:

> " I don't think GPS while it can limit where you can go is necessarily going to protect the public.
>
> I don't think EM would stop you from getting another weapon or going and doing anything violent in the community. So I don't think that's an option."

Consequently, the court denied pretrial release.

¶ 11 On October 31, 2024, defendant filed a "Petition for Pretrial Release," which the circuit court later characterized as a motion for relief pursuant to Illinois Supreme Court Rule 604(c)(1) (eff. Apr. 15, 2024). As relevant here, defendant again argued that GPS or electronic monitoring would sufficiently mitigate any danger his release might pose to the victim or community.

¶ 12 The circuit court held a hearing on defendant's motion on November 20, 2024. At the hearing, defense counsel stated that defendant could complete electronic monitoring at this brother's home, where he lived prior to his arrest. Counsel also noted that defendant was 25 years old, was working as a landscaper prior to his arrest, and had "nearly completed a GED course." Defendant was also involved in the community and was expecting twins due in December 2024.

¶ 13 After hearing from the parties, the circuit court found no error in its original detention order. Regarding possible release conditions, the court stated:

> "His behavior appears to be escalating because he went from a conviction of just mere possession of a gun to now being charged with aggravated discharge and with an attempt armed robbery. Electronic monitoring and Pretrial Services cannot keep one from possessing weapons. It cannot keep—does not keep tabs on someone's movement at all

times and given his inability to follow the rules in the past, he is not a candidate for any of these conditions of release that would mitigate any potential threat. Therefore, he will continue to be detained."

¶ 14 This appeal followed.

¶ 15                                          II. ANALYSIS

¶ 16 Under the Code, all criminal defendants are now presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). That presumption is overcome only if the State can prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community based on specific, articulable facts of the case; and (3) no condition or combination of conditions on the defendant's pretrial release can mitigate that threat. *Id.* Where, as here, parties proceed at the detention hearing solely by proffer, our review of the circuit court's detention decision is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 17 In this case, defendant contests only the third element, that no condition or combination of conditions on release would be sufficient to mitigate his dangerousness. Specifically, citing *People v. Mitchell*, 2024 IL App (1st) 240730-U, ¶ 20, defendant argues that the circuit court's decision should be vacated because the court relied on the erroneous belief that electronic monitoring would not "keep tabs" on him at all times.

¶ 18 In *Mitchell*, we reversed the circuit court's denial of pretrial release where the court rejected the defendant's request for electronic monitoring based on the mistaken impression that the electronic monitoring statute " 'allows for two separate days where people would not be on electronic home monitoring where people are not being monitored.' " *Id.* ¶ 8. We explained that although a defendant on electronic monitoring has two days to conduct some basic activities

outside of his residence, he is still "monitored" during that time. *Id.* ¶ 23. Because it was clear that the circuit court originally misunderstood the law as it relates to electronic monitoring, we remanded the matter for the court to reconsider whether electronic monitoring would be appropriate. *Id.* ¶ 26.

¶ 19    This case is not like *Mitchell*. Here, it was the State, not the circuit court, that erroneously claimed that "[e]lectronic monitoring allows two days of unrestrictive movement." Although the court did comment that electronic monitoring would not "keep tabs on someone's movement at all times," this is not the same as the court's remarks in *Mitchell*. Rather, the court's point here was merely that the inherent limitations of electronic monitoring would not necessarily prevent defendant "getting another weapon or going and doing anything violent in the community." In short, the court's statements in this case clearly show that it understood the nature of electronic monitoring, but rejected it in light of factors such as the nature of the offense and defendant's history of illegal firearm possession and noncompliance with the terms of his probation. Thus, *Mitchell* does not provide a basis on which to reverse the circuit court.

¶ 20    Relatedly, defendant also argues that the State failed to prove that less restrictive means like electronic or GPS monitoring would be sufficient to mitigate any danger he posed to public safety. He emphasizes that he has no convictions for violent crimes, was gainfully employed prior to his arrest, and was not on any form of probation or pretrial release at the time of his arrest. He also notes that he has lifelong ties to the Chicago area, a supportive family, and a place to complete electronic monitoring at his brother's home.

¶ 21    When evaluating whether the State proved that no conditions short of detention are sufficient in a given case, we are mindful that the State need not "specifically address every conceivable condition or combination of conditions and argue why each condition does not apply."

*People v. Mikolaitis*, 2024 IL 130693, ¶ 20. Rather, the State meets its burden by presenting sufficient evidence regarding the specifics of each case, such as the nature of the offense, the defendant's criminal history, and any other considerations known to the State at the time of the detention hearing. *Id.*

¶ 22    We find that the State has met its burden in this case, for many of the reasons identified by the circuit court. Although defendant does not have a particularly violent or lengthy criminal history, he does have a prior felony for the illegal possession of a firearm and a juvenile adjudication for which his probation was terminated unsatisfactorily. The nature of the present offense also weighs heavily against defendant, as he is alleged to have shot a victim during a brazen, mid-afternoon robbery attempt that occurred in a public area with multiple people present. We agree with the circuit court and the State that defendant's graduation from simple possession of a firearm to discharge of a firearm during an armed robbery represents a troubling "escalation" in his behavior. Additionally, it was appropriate for the court to consider that defendant's history of terminating probation unsatisfactorily evinces an inability to comply with release conditions. Based on these circumstances, we find that the circuit court did not err in determining that no condition or combination of conditions would reasonably mitigate the danger defendant's release would pose to the community. Accordingly, we affirm the circuit court's decision to deny defendant pretrial release.

### III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court.

¶ 24    Affirmed.