2025 IL App (1st) 250589-U

FIRST DISTRICT,
SIXTH DIVISION
June 23, 2025

No. 1-25-0589B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 25 CR 0185401 |
| | ) | |
| DAVION GRIFFIN, | ) ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Torrie L. Corbin and |
| | ) | Michael R. Clancy, |
| | ) | Judges Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order denying pretrial release is reversed and the cause is remanded for the trial court to properly consider conditions of pretrial release based on the specific articulable facts of the case.

¶ 2    Defendant Davion Griffin appeals the trial court's order denying him pretrial release pursuant to the amendments to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq.* (West 2022)), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or Pretrial Fairness Act (Act). See Pub. Act 101-652

(eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we reverse and remand.

¶ 3                                                   I. BACKGROUND

¶ 4       On January 28, 2025, Griffin was arrested and charged with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2022)) and aggravated battery to a child under the age of 13 causing great bodily harm (720 ILCS 5/110-6.1(a) (West 2022)). On January 29, 2025, the State filed a petition for pretrial detention. A pretrial detention hearing was held that same day, at which the State proffered the following evidence.

¶ 5       On December 8, 2024, Griffin was at his apartment with his girlfriend Ariyah Bohannon and their one-month-old child. Griffin was sitting on the bed playing video games while Bohannon was sitting on the bed holding the child. A verbal altercation arose between Griffin and Bohannon, causing Griffin to strike Bohannon with a "closed fisted strike." The child was "struck by the Defendant's follow through from his punch." Griffin told Bohannon that her forehead was bleeding. She set the baby down on the bed and went to the bathroom to clean her forehead. When she returned, Griffin was holding the baby.

¶ 6       Bohannon called her aunt via FaceTime, who observed a large cut on Bohannon's forehead and blood running down her face. Bohannon was crying and screaming. Bohannon's aunt assumed Griffin was responsible for the laceration. Griffin called his mother, Degan, and told her to come over. When Degan arrived, she could hear Griffin and Bohannon screaming from outside the apartment. When she entered, she saw Bohannon had a large cut on her forehead. She asked the couple what happened, but neither responded. When Degan took the baby, she noticed the child was wearing "snow clothes" and had a "knot on their forehead." Degan called 911. As they awaited the ambulance, Bohannon became lightheaded and fell to the

ground. Griffin fled the scene before police arrived. Bohannon and the baby were transported to the hospital. Bohannon received seven stitches for the cut on her forehead. The baby was treated for three skull fractures and a brain bleed.

¶ 7        An emergency order of protection was issued on December 26, 2024. Griffin appeared at a January 6, 2025 hearing but failed to appear in court on January 17, 2025, when the plenary two-year order of protection was issued. The order of protection grants physical care and possession of the child to Bohannon. According to defense counsel, Griffin attempted to attend the January 17 hearing via Zoom, but he did not have service at work. Griffin was arrested on January 28, 2025, when the Chicago Police Department Great Lakes Fugitive Task Force was given his information.

¶ 8        The State argued the proof is evident and presumption great that Griffin committed the offenses and that he poses a real and present threat to the victims, as he struck both Bohannon and his one-month-old child, causing severe injuries. The State asserted no less restrictive conditions could mitigate the threat posed by Griffin, as electronic home monitoring (EHM) allows for two days of "relatively unsupervised movement" and GPS "only protects a small number of addresses" and would not be helpful to a one-month-old child who "can't operate a cell phone and update Pretrial Services on their safety."

¶ 9        Defense counsel proffered that the verbal altercation arose because Bohannon was "nagging" defendant. At some point, Griffin "tried to get ahold of the child." Bohannon "started some kind of tug of war match with this baby," trying to pull the baby away from Griffin, and, in doing so, fell back and hit her head on a bedpost. Counsel argued this version of events is more consistent with the injuries sustained and posited that the baby had some type of fall to cause such extensive injuries. Counsel stated that, according to Griffin's mother, Bohannon is

"incredibly violent" and has a history of violence with both Griffin and previous intimate partners. In addition, the doctor told Griffin's mother that the baby's injuries were "more consistent with a fall that happened previous to this accident even occurring."

¶ 10    Griffin was 20 years old at the time of the offense, has no criminal background, is a high school graduate, and a full-time ironworker. His pretrial services assessment did not flag him for new violent criminal activity. He received a 2 out of 6 on the New Criminal Activity Scale, a 1 out of 6 for Failure to Appear, a Domestic Violence Screening Instrument (DVSI) score of 2 and, if released, his pretrial services score "coincides with pretrial supervision Level 1." Given his low pretrial scores and the inconsistencies between the injuries and the State's proffer, defense counsel argued Griffin does not pose a real and present threat to Bohannon or the child and that he should be released on whatever conditions the court finds appropriate.

¶ 11    The trial court disagreed, finding the State proved by clear and convincing evidence that the proof is evident and the presumption great that Griffin committed the qualifying offenses and that he poses a real and present threat to the safety of the victims. Although the court was "taken aback *** that it was purportedly one punch that caused these injuries," it could not "ignore the fact that a child was caught in the melee of the defendant attacking [his] girlfriend," resulting in severe injuries to both and that Griffin showed a "complete and reckless disregard for the safety of the mother and the child."

¶ 12    The trial court found that no condition or conditions of pretrial release could mitigate the real and present threat to the safety of the victims since a one-month-old "can't protect themselves and can't adhere to GPS and [EHM] standards and participate as an adult would." In its written detention order, the trial court states that Griffin "has shown disregard for people,"

"conditions are inadequate to protect these victims," and GPS and EHM "have geographical limitations and response time limitations."

¶ 13    On February 18, 2025, Griffin filed a motion for relief per Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), arguing the State failed to prove by clear and convincing evidence that he poses a real and present threat to the victims. Griffin pointed out that he has no prior history of domestic violence, no prior criminal history, and, in recent communications between Bohannon and defense counsel, Bohannon indicated she did not want to cooperate in the prosecution because the incident was an "accident." Griffin asserted the State failed to prove no conditions could mitigate the threat posed to the victims because "[m]erely alleging that the defendant committed the violent offense is not sufficient." Moreover, geographical and response time limitations of GPS and EHM to would seemingly apply to every case and, therefore, is not based on the specific articulable facts of this case.

¶ 14    At the March 4, 2025 hearing on Griffin's motion for relief, defense counsel clarified that Griffin and Bohannon do not reside together. Counsel argued that EHM would appropriately mitigate any risk to the safety of the victims given Griffin's lack of criminal background, the support from his family, and that he was out in the community for nearly two months between the incident and his arrest with no further allegations. The State responded that "GPS and [EHM] would only create a pen in which he would have potential victims" and "would not alleviate the degree of violence that has been effectuated, especially the degree of violence."

¶ 15    The trial court denied Griffin's motion, finding he poses a real and present threat to both victims to whom he caused severe injuries. Further, no less restrictive conditions could avoid the threat posed to the victims, since "[n]either GPS nor EHM would prevent the defendant from moving about the community"— they "just monitor[] the individual," the response time is

"limited," and "there are two days in which a person on electronic monitoring is allowed to move about." Griffin appeals.

¶ 16                                               II. ANALYSIS

¶ 17        Pursuant to article 110 of the Code, as amended, "[a]ll defendants shall be presumed eligible for pretrial release" and pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-6.1(e) (West 2022). After filing a timely verified petition requesting denial of pretrial release, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that defendant committed a detainable offense; (2) defendant poses a real and present threat to the safety of any person or the community based on the specific articulable facts of the case, or is a flight risk; and (3) no condition or combination of conditions can mitigate this threat or risk of flight. *Id.* § 110-6.1(e)(1)-(3). Where, as here, the parties proceeded solely by proffer, we review the denial of pretrial release *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 18        In making a dangerousness determination, the court may consider certain factors including, but not limited to, the nature and circumstances of the offense; the history and characteristics of the defendant; the identity of any person or persons whose safety defendant is believed to pose a threat and the nature of the threat; any statement made by defendant; the age and physical condition of the defendant; the age and physical condition of any victim; whether defendant has access to weapons; whether defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal, or completion of sentence for another offense; and any other factors listed in section 110-5 to have a reasonable bearing on defendant's propensity or reputation for violent or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (1)-(9).

¶ 19        Griffin argues the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of Bohannon and his child given his lack of criminal history and low pretrial assessment scores. We disagree. It is undisputed that Griffin put Bohannon and his one-month-old child at risk of serious harm, either directly by punching Bohannon and hitting the child with his follow-through, or indirectly by engaging in the "tug of war" over the baby with Bohannon. Bohannon's laceration required seven stitches, and the baby suffered three skull fractures and a brain bleed. Given the severity of the injuries, the age and fragility of the baby, and the utter reckless disregard for the safety of his child and Bohannon, Griffin poses a clear and present threat to their safety.

¶ 20        Nevertheless, we find that the trial court failed to adequately consider and articulate why no condition or combination of conditions of pretrial release could mitigate the threat posed by Griffin, based on the specific articulable facts of the case. If the trial court finds the State proved a threat to the safety of any person or the community, the court must determine which conditions of pretrial release, "if any, will reasonably ensure *** the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a). In making this determination, the trial court "shall" consider: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the history and characteristics of the defendant; the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* §110-5(a) (1)-(5). Where, as here, the defendant is charged with aggravated domestic battery, the court may consider additional factors enumerated in section 110-5(a)(6),

such as whether the defendant has a history of domestic violence, whether defendant is a threat to any other person, and the severity of the incident. *Id.* §110-5(a)(6).

¶ 21    If the trial court denies pretrial release, the court must make a "written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 22    The trial court's detention order states that no condition or combination of conditions of release could mitigate the threat posed by Griffin because "[Griffin] has shown disregard for people," "conditions are inadequate to protect these victims," and "GPS/[EHM] have geographical limitations and response time limitations." We find this to be insufficient under section 110-6.1(h)(1) of the Code. The trial court provides no explanation as to why "conditions are inadequate to protect these victims" based on the specific facts of *this case.* As Griffin notes, relying generally on the geographical and response time limitations of GPS and EHM alone could "be extended to deny the release of any person accused of this crime, regardless of the circumstances." See *People v. Grosey*, 2024 IL App (2d) 240391-U, ¶ 26. The trial court's written detention order fails to explain why EHM, GPS, the order of protection and no contact order, or a combination of these conditions, would not adequately protect the victims in this case. The record indicates that approximately two months elapsed between the incident and Griffin's arrest. He picked up no new charges, did not violate the plenary order of protection, is not alleged to have engaged in any other criminal or violent activity, and supposedly Bohannon is no longer cooperating with the prosecution, claiming it was an "accident."

¶ 23    The trial court's oral pronouncements at the initial detention hearing and on Griffin's motion for relief do not cure the deficiencies in the written order. At Griffin's initial detention hearing, the trial court found EHM and GPS to be insufficient because "[a] 1-month old can't protect themselves and can't adhere to GPS and [EHM] standards and participate as an adult would." However, the baby would always be with an adult who could report any violations of pretrial conditions. At the hearing on the motion for relief, the court cited the "two days in which a person on electronic home monitoring is allowed to move about." See 730 ILCS 5/5-8A-4 (West 2022) (defendants on EHM must be provided a minimum of two days of "movement" to "participate in basic activities" such as those provided). It is not clear whether the trial court mistakenly believed Griffin would be granted unfettered movement during these two days. If it did, it was mistaken. If placed on EHM, Griffin would still be monitored and would only be allowed such movement as necessary to "participate in basic activities." See *People v. Mitchell*, 2024 IL App (1st) 240730-U, ¶¶ 23, 26 (trial court did not properly consider EHM because it mistakenly believed defendant would be completely unmonitored during the two days of movement allowed for basic activities). This, coupled with the order of protection and no contact order, may well be sufficient to mitigate the threat posed by Griffin.

¶ 24    Based on our review of the record, we find the trial court failed to properly consider and explain why any condition or combination of conditions of pretrial release would fail to mitigate the threat posed by defendant based on the specific articulable facts of this case. Accordingly, we reverse the trial court's detention order and remand for the court to consider whether any condition or combination of conditions listed in section 110-10(b) of the Code (725 ILCS 5/110-10 (West 2022)) could mitigate the threat of harm posed to the victims in this case. See, *e.g.*, *Mitchell*, 2024 IL App (1st) 240730-U, ¶ 26 (reversing and remanding detention order for the

trial court to consider EHM as an alternative to detention where trial court mistakenly believed defendant would not be monitored during two days of movement to participate in basic activities); see also *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 34 (reversing and remanding for trial court to comply with the Code, "specifically, to consider alternatives to detention *** and explain why these alternatives will or will not mitigate [defendant's] threat to the victims"). We take no position on what the trial court's ruling should be. We merely remand this matter for the trial court to comply with the statutory requirements and articulate its findings based on the facts of this case rather than generalities and the universal limitations of EHM and GPS.

¶ 25                                        III. CONCLUSION

¶ 26         For the foregoing reasons, we reverse the trial court's detention order and remand for the trial court to consider whether Griffin should be placed on conditions of pretrial release.

¶ 27         Reversed and remanded.