2025 IL App (1st) 242240-U

Fourth Division
Filed March 10, 2025

No. 1-24-2240B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24 CR 5820 |
| WILLIE SALLEY, | ) ) | The Honorable Thomas Byrne, |
| Defendant-Appellant. | ) ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court correctly found that continued pretrial detention was necessary to avoid the safety risk that defendant's release would pose.

¶ 2     Defendant Willie Salley appeals the circuit court's orders continuing his pretrial detention and denying his motion for relief pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)) as amended by Public Act 101-652 (eff. Jan. 1, 2023). For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     Salley was charged with aggravated unlawful use of a weapon by a felon (AUUWF) (720 ILCS 5/24-1.6(a), (d)(3) (West 2022)) and two misdemeanor offenses—unlawful possession of cannabis and driving on a revoked or suspended license.

¶ 5        On May 5, 2024, the State filed a verified petition to deny Salley pretrial release. The State alleged AUUWF was a detainable offense, and that Salley posed a real and present safety threat to another person or persons or the community. The circuit court immediately held a detention hearing.

¶ 6        At the hearing, the State proffered evidence of the charged offenses and Salley's criminal history. On May 3, 2024, at approximately 5:52 p.m., civilian security guards employed by the University of Chicago were monitoring protests occurring in the university's quad. The security guards flagged down police officers regarding a person suspected of carrying a firearm. The guards told officers that Salley came to confront one of security guards about a personal issue. One of the guards told the officers she saw Salley grab a gun from his car and approach the other security guard.

¶ 7        Salley was arrested, searched, and then taken to the police station. The officers did not find a gun on his person. One of the security guards told officers that Salley put the firearm in his vehicle prior to being detained. Subsequently, officers found a vehicle registered to Salley parked nearby. In the vehicle, officers found a purple drawstring bag on the front passenger seat, which contained a gold Glock 19X nine-millimeter handgun. The gun had a round in the chamber and 16 more rounds in the magazine. It was equipped with a laser attachment, and officers found an extended magazine containing 25 additional nine-millimeter rounds in the trunk.

¶ 8        Salley was previously convicted of aggravated discharge of a firearm and sentenced to 10 years in prison. Salley also had two additional misdemeanor convictions. Salley's public safety assessment report rated him as a three out of six on the new-criminal-activity scale and a two out of six on the failure-to-appear scale. The report recommended release with pretrial monitoring.

¶ 9        The State asserted that Salley posed a real and present safety threat to the community where he brought a firearm to a dispute with the university security guard and that no condition or combination of conditions would mitigate his risk to the community as "he's already a registered gun offender and here he is at the campus of the University of Chicago confronting someone with a loaded handgun."

¶ 10 Defense counsel argued that the information contained in the police report did not support the evidence that Salley approached one of the security guards with a gun, "this confrontation was unrelated to this demonstration," there were issues with the witness's credibility, and it was unknown who else had access to Salley's car.

¶ 11 In rebuttal, in response to the court asking for the underlying facts of Salley's prior conviction, the State tendered the police report to the court and defense counsel. The prosecutor paraphrased the report, which disclosed as follows:

> "[O]n August 25, 2019, a physical altercation occurred in the Parkway Gardens apartment complex. After a fight was over, shots were fired back and forth between two separate groups. The arrestee of this arrest report, who is the defendant present before the Court, had been identified as the individual who was with the victim's group that fired a handgun toward the opposing group, which included an individual by the name of Cashell Williams ***. Williams had fired toward Marshall's group. Marshall had been shot in the chest and killed. The defendant, who is present before the Court, had admitted to being on the scene, had a handgun and fired three times."

¶ 12 The circuit court ordered Salley detained. It found that the proof was evident and the presumption was great that Salley committed a detainable offense; that Salley posed a threat to the community's safety based on the fact he is a registered gun offender not allowed to possess a weapon and "[n]ot only [was] he alleged to have possessed a weapon, but retrieved that weapon, because he was in a dispute with a security guard" with a large group of people in the vicinity; and that no condition or combination of conditions could mitigate that threat as Salley had demonstrated "the ability to obtain a weapon [was] clearly not something beyond his skill set."

¶ 13 The State filed a superseding information on June 13, 2024, charging Salley with two counts of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) and two counts of AUUWF.

¶ 14　　On June 28, 2024, Salley filed a motion for pretrial release. A hearing was held on the motion on July 16, 2024. Defense counsel proffered that, on the afternoon of the charged offense, Salley drove to the University of Chicago to pick up his son, whose child was in the hospital. When he got there, his son "had got into an altercation" with a security guard, and Salley "tried to diffuse the situation" by requesting a supervisor. When the police arrived, one of the security guards approached an officer and said that Salley had a gun on him. The officers patted down Salley but did not find one. Nevertheless, Salley was detained and taken to the station. Police later searched his car, at which point they found the gun and the ammunition. Additionally, counsel stated that, at the time of his arrest, Salley was gainfully employed as a line supervisor at Dakkota Integrated Systems.

¶ 15　　Based on these facts, defense counsel argued that Salley never had a gun and never threatened anybody with a gun, that the security guard lied to the officer about seeing him with one, and that Salley did not pose a threat to anybody. Noting that the pretrial service report had recommended releasing Salley with conditions, counsel urged the court to release him and place him on house arrest or electronic monitoring.

¶ 16　　The State recounted the facts of its previous proffer. It argued the proof was evident and the presumption was great that Salley committed the offense, that Salley posed a clear and present threat to the public as he was armed with a firearm, which he was prohibited from possessing, with an extended magazine "in public, in a crowd of people in the middle of the day at approximately 6:00 p.m.," and there were no condition or combination of conditions that could mitigate Salley's risk.

¶ 17　　The circuit court denied Salley's motion for pretrial release and ordered continued detention. The court found that Salley was charged with a detainable offense and there was an eyewitness, whose credibility could be determined at trial. Further, the court found that continued detention was necessary. The court stated that Salley was a threat to the safety of society as he possessed a weapon, which he was prohibited from having, during a dispute with the security guard and "was willing to use that gun either by show or by use to settle a dispute in broad daylight in a medical

facility." The court further stated, "The notion that EM or GPS or some other means of restricting the defendant[ ] short of the detention would stop this individual if set on using a firearm to settle whatever dispute he may encounter even within his household on pretrial release is in this court's judgment not adequate to protect society."

¶ 18    On July 16, 2024, Salley filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). The court denied the motion on August 28, 2024, and Salley appeals.

¶ 19                                  II.  ANALYSIS

¶ 20    On appeal, Salley argues the circuit court erred by continuing his pretrial detention because defense counsel presented new evidence showing Salley did not pose a safety threat, as initially determined by the court, and that any threat he presented could be mitigated with conditions.

¶ 21    When a defendant has been denied pretrial release, at each subsequent court appearance, the circuit court "must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). "The Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. At a continued detention hearing, the court starts from the premise that detention was necessary to guard against the threat posed by the defendant and "asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The finding, as required by section 110-6.1(i-5), is "a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *Id.*

¶ 22    Under the recent Supreme Court decision in *People v. Morgan*, 2025 IL 130626, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v.*

*Morgan*, 2025 IL 130626, ¶ 54. While *Morgan* involved an initial petition for detention, not a continued-detention determination, its reasoning applies equally to hearings on continued detention where the parties again proceed solely by proffer, so we will review the circuit court's findings *de novo*. See *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21 (reviewing continued-detention order *de novo* under *Morgan*).

¶ 23    The new information proffered by Salley at the July 16, 2024 hearing provided additional context for the charged incident, but it did not alter the circuit court's determination that his detention was necessary to prevent a threat to the community. See 725 ILCS 5/110-6.1(i-5) (West 2022). The fact that Salley went to the University of Chicago campus to pick up his son from the hospital does not change that a university security guard saw Salley take a gun from his car and confront one of her co-workers—someone with whom Salley had an ongoing personal issue. It does not change that the guard saw Salley put the gun back in the car or that the gun was found in his car. It does not change that, as a convicted felon, Salley was legally barred from possessing a gun. Most significantly, it does not change that, in the words of the circuit court, "It wasn't just a gun, it was a gun with a laser sight and a magazine with a total rounds of 41 rounds of live ammunition for that [nine-]millimeter gun." We agree with the circuit court that, under the particular circumstances of this case, Salley's continued detention remained necessary "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." See 725 ILCS 5/110-6.1(i-5) (West 2022). That determination is affirmed.

¶ 24                              III.  CONCLUSION

¶ 25    Based on the foregoing reasons, we affirm the circuit court's orders continuing Salley's pretrial detention and denying his motion for relief.

¶ 26    Affirmed.