2025 IL App (1st) 242464-U

Fourth Division
Filed March 24, 2025

No. 1-24-2464B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of Cook County |
| | ) | |
|     v. | ) | No. 24 CR 05375 01 |
| | ) | |
| XAVIER D. WALKER, | ) | The Honorable Tiana Blakely, |
|     Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders for continued detention were affirmed where new evidence proffered after the initial detention hearing, although relevant, did not show that continued detention was no longer necessary to protect the victim and the community.

¶ 2    The defendant, Xaiver Walker, was charged by complaint on May 17, 2024, with attempted murder and aggravated battery with a firearm. The State filed a petition to deny pretrial release and, at his initial appearance that same day, the court held a detention hearing and ultimately denied Walker pretrial release. About two weeks later, on May 30, 2024, the State filed a superseding indictment charging Walker with attempted murder, aggravated battery, and aggravated unlawful use of a weapon. The record shows that the court found that Walker's continued detention was necessary at his June 11 arraignment and at a July 19 status hearing. On September 10, Walker

filed a petition for pretrial release highlighting new information about the offense that the defense had received in discovery. After a hearing held the next day, September 11, the court denied the release petition and again found that Walker's continued detention was necessary. Then, on October 23, Walker filed a Rule 604(h)(2) motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The motion was heard and denied on November 22, and the court again found that Walker's continued detention was necessary.

¶ 3    At each of the hearings relevant to this appeal, the parties proceeded by proffer. For the sake of clarity, we will not recount each of those proffers in sequence. Instead, we relate the facts disclosed at the initial hearing, the facts disclosed at the subsequent hearings, and we note, where appropriate, any conflicts or disagreements. As our review is *de novo* (see *infra* ¶ 10), it is unnecessary to detail the reasons the court gave for its decisions at each hearing, but we note that, at each of those hearings, the court specifically found that Walker's release would pose a danger both to the specific victim of the charged offense and to the community generally.

¶ 4    The charges in this case stem from an incident that occurred shortly before 10 p.m. on April 30, 2024, in south suburban Riverdale. The alleged victim was walking through an alley when Walker, who was then 17 years old, and four or five other similarly aged boys appeared at the other end. Walker and one of the other boys, identified in the record by the name "Weezi," approached the victim; Walker went directly in front of the victim, while Weezi circled behind. Walker produced a gun and pointed at the victim, who tried to grab it away. At that point, five or six shots were fired. The record contains conflicting information about who fired those shots. At the initial detention hearing, the State asserted that it was Walker, but the defense proffered at later hearings that a video of the incident shows that they were fired by Weezi. After his arrest, Walker gave a statement admitting that he approached the victim and pointed a gun at him based on the victim's affiliation with group that Walker was unfavorably disposed toward.

¶ 5    Beyond the facts of the charged offense, the relevant information available at the initial detention hearing was minimal. At the time of the charged offense, Walker was on pretrial release in a juvenile matter in which he was alleged to have committed aggravated fleeing or attempting

to elude a peace officer. At the initial hearing, the State proffered—inaccurately, as it turned out—that the then-pending juvenile case also involved an allegation that Walker had committed aggravated unlawful use of a weapon. The terms of his pretrial release in that case were minimal: he was required to meet with pretrial services, attend school, and not commit any crimes. The only time he violated those conditions was during the incident charged in this case. The defense proffered that, if Walker was released, he would live his mother, who worked full-time from home and would be able to watch over him to make sure he did not violate release conditions. A representative from pretrial services reported that, on a risk assessment, Walker scored two out of six on the new-criminal-activity scale and one out of six on the failure-to-appear scale. Pretrial services recommended that he be released on conditions.

¶ 6    Additional information entered the picture at later hearings. The parties' proffers disclosed that, during the pendency of his juvenile case, Walker had spent 30 days on electronic monitoring without any violations; the present charges were based on events that took place after he was taken off of electronic monitoring. He had also developed a relationship with a male mentor through his participation in pretrial services. A letter from the principal of the school Walker had been attending at his arrest endorsed Walker's academic abilities, leadership qualities, and strong character. A letter from Walker's former math teacher described him as someone who was respectful, contributed positively to the classroom environment, and was well-liked by the school community. Since his arrest, Walker had been held at the Juvenile Temporary Detention Center (JTDC), even after turning 18 years old. As of September 2024, his record at the JTDC was exemplary: he was performing well in school, he had no violations, and he had quickly worked his way up to—and remained at—the highest "level" that can be attained by JTDC detainees. His mother's work-from-home employment was as an insurance adjuster whose only other child, Walker's older brother, did not live at home, enabling her to supervise Walker exclusively. After the court expressed concerns about allowing Walker movement to attend school at the September 11, 2024 hearing, Walker's mother identified a school in Country Club Hills that he would be able to attend virtually, without having to leave the home and travel through the community.

¶ 7 Walker now appeals from the trial court's denials of his petition for release and his Rule 604(h)(2) motion for relief.[1]

¶ 8 Pretrial release in Illinois is governed by article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-1 *et seq.* (2022)), as recently amended by a series of provisions within Public Act 101-652 (eff. Jan. 1, 2023) popularly, albeit unofficially, known as the Pretrial Fairness Act. Under the Pretrial Fairness Act, all defendants are eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022). They are also presumed to be entitled to release, although there are circumstances under which release can be denied. *Id.* §§ 110-2(a), 110-6.1(e). To overcome the presumption in favor of release, the State must show, by clear and convincing evidence, that those circumstances exist. *Id.* §§ 110-6.1(e). Here, Walker was originally detained based on the State's allegation that he was dangerous. To rebut the presumption in favor of release on the ground of dangerousness, the State must prove three things by clear and convincing evidence: (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) no combination of release conditions "can mitigate" that threat. *Id.* § 110-6.1(e)(1) to (3). Here, the court at Walker's initial detention hearing found that the State had proven all three propositions, and Walker does not contest that finding.

¶ 9 When a defendant has been denied pretrial release, at each subsequent court appearance, the trial court "must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). "The Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People*

---

[1] The notice of appeal also indicates that Walker is appealing from the initial detention order entered on May 17, 2024, but his arguments on appeal concern only the court's continued-detention orders.

*v. Casey*, 2024 IL App (3d) 230568, ¶ 13. At a continued detention hearing, the court starts from the premise that detention was necessary to guard against the threat posed by the defendant and "asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The finding required by section 110-6.1(i-5), is "a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *Id.*[2]

¶ 10    Until recently, we would have reviewed a continued-detention determination for an abuse of discretion. See *Thomas*, 2024 IL App (1st) 240479, ¶ 16. But the Illinois Supreme Court recently held that, when the parties proceed by proffer at a detention hearing, the trial court's determinations are reviewed *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. While *Morgan* involved an initial petition for detention, not a continued-detention determination, its reasoning applies equally to hearings on continued detention where the parties again proceed solely by proffer, so we will review the trial court's findings *de novo*. See *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 21 (reviewing continued-detention order *de novo* under *Morgan*); *People v. Salley*, 2025 IL App (1st) 242240-U, ¶ 22 (citing *Wilson*).[3] The State concedes that *Morgan* controls this case, and we accept that concession.

¶ 11    Turning to the merits, we start with the premise that Walker's detention is necessary. *Thomas*, 2024 IL App (1st) 240479, ¶ 14. Although Walker does not challenge the court's decision at the initial hearing, we must examine what the evidence showed to evaluate whether changes to those circumstances undermine that premise. The facts proffered at the initial detention hearing unambiguously showed that Walker and an accomplice, armed with guns and backed up by several others, accosted a lone victim walking through an alley at night for no reason other than

---

[2]    It has been suggested that the standard of proof at a continued-detention hearing is clear and convincing evidence. See *Thomas*, 2024 IL App (1st) 240479, ¶ 24 (Reyes, P.J., concurring). As neither party asks us to depart from *Thomas*, we follow the majority's description of a lesser standard.

[3]    At least one other case has posed the question without answering it. See *People v. Davis-Peal*, 2025 IL App (1st) 242239-U, ¶ 22 (finding that the result would be the same under any standard of review).

dissatisfaction with the victim's social affiliations. According to the State's proffer at the initial hearing, Walker drew his weapon, pointed it at the victim, and fired six shots at him. Given those violent actions and the existence of a motive to repeat them, we have no difficulty agreeing with the trial court's initial determination that Walker's release would pose a danger to the safety of the victim or to members of the community against whom Walker would be similarly motivated. As for the efficacy of release conditions, the parties' initial proffers showed that, at the time of the charged incident, Walker was on pretrial release in a gun case. Walker's possession of a gun during the charged offense demonstrated that, despite being on pretrial release, he was still able to obtain a firearm. Furthermore, the particular safety threat shown at the initial hearing was that Walker had displayed a willingness to not only carry a gun but also to use it against another person without immediate provocation and for no reason beyond the other person's relationship to a group that Walker, for some reason, disliked. The trial court noted, and we agree, that the nature of that threat diminished, to some extent, the ability of even stringent release conditions such as electronic monitoring to prevent him from engaging in further acts of violence for similar reasons. Again, we agree that the evidence at the original detention hearing supported the court's conclusion that no set of release conditions could adequately mitigate that threat.

¶ 12    The question becomes whether the new information presented at subsequent hearings undermined the conclusion that Walker's detention remained necessary. On appeal, Walker emphasizes that the information that came out after the initial detention hearing showed that Walker's accomplice was the one who shot the victim, not Walker himself. Under the particular circumstances of this case, that makes little, if any, difference. The newly proffered facts showed that Walker's accomplice circled behind the victim and started shooting when the victim tried to disarm Walker. The obvious explanation for why Walker didn't fire was that the victim was trying to disarm him, not that Walker posed no threat. We do not see this as a material change in circumstances.

¶ 13    Walker argues, however, that the new information proffered after the initial detention hearing undermined the court's original conclusion that no conditions of release could guard against that

threat. Although we agree to an extent, we do not find that the changed circumstances were substantial enough to call for his release rather than his continued detention. The clarification that Walker's then-pending juvenile case did not involve gun charges undermined the inference that Walker was a second-time weapons offender. Even so, that does not change that the juvenile case involved Walker fleeing from the police, which was highly concerning in and of itself. Walker also highlights his exemplary record while in the JTDC, arguing that it demonstrates that he is capable of successfully adhering to any release conditions he might be required to follow. We certainly commend Walker's conduct while in pretrial detention, but we do not think that his success there would necessarily translate to a successful pretrial release. There are significant differences between custodial detention and even highly-restrictive pretrial release. The moment-to-moment supervision of JTDC personnel might be precisely *why* Walker has been successful, and the highly structured and supervised environment of the JTDC simply cannot be replicated through release conditions. Walker also points to the fact that, if he were released, he would live at his mother's home and under her supervision. The record shows that his mother has remained engaged with this case, attending court dates and identifying a school that Walker would be able to attend virtually, thus limiting his need for movement if placed on home confinement. But there are two reasons why we are not satisfied that this sufficiently undermines the conclusion that Walker's pretrial detention remains necessary. First, Walker's mother lives in the same community where the charged offense takes place. Putting Walker back into the environment that produced the underlying offense comes perilously close to setting him up for failure, with severe—and potentially fatal—consequences for other people in that community. Second, although we do not doubt that Walker's mother would act to the best of her ability to ensure that her son complied with release conditions, we cannot ignore that, despite her best intentions, Walker was still able to acquire a gun while on pretrial release in his juvenile case and still able to accost the victim in this case without any immediate provocation.

¶ 14        In sum, although we agree with Walker that new relevant information came out after his initial detention hearing, we do not think that this information sufficiently undermined the court's original

determination that no set of release conditions could adequately mitigate the danger that he would pose to the victim and others in the community with similar affiliations. Under the circumstances presented by this case, we find that the trial court did not err when it determined that Walker's continued detention was necessary to avoid a real and present threat to the safety of the victim and the community. For that reason, we affirm the trial court's orders denying his petition for release, denying his motion for relief, and requiring Walker's pretrial detention to continue.

¶ 15        Affirmed.