2025 IL App (2d) 250121-U
No. 2-25-0121
Order filed July 2, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   24-CF-1714 |
| ZACKERY L. MOORE, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., and Donald J. Tegeler, Jr., |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy concurred in the judgment.
Justice McLaren dissented.

**ORDER**

¶ 1    *Held*:   Trial court's detention decision affirmed, where the evidence that defendant: (1) in a disproportionate reaction, struck a police officer, causing facial fractures and requiring surgery, sufficed to establish dangerousness, and (2) repeatedly refused to obey commands by multiple uniformed police officers and had to be subdued for his arrest, sufficed to establish that he would not likely obey conditions of release.

¶ 2    Defendant, Zackery L. Moore, appeals from the trial court's order denying his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023).   See Pub. Act 102-1104, §

70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).    For the following reasons, we affirm.

¶ 3                                            I. BACKGROUND

¶ 4                                   A. Charges and Petition to Detain

¶ 5      On August 7, 2024, defendant was charged with aggravated battery causing great bodily harm to a peace officer (720 ILCS 5/12-3.05(a)(3) (West 2022)), aggravated battery to a peace officer (*id.* § 12-3.05(d)(4)(i)), and resisting and obstructing a peace officer (*id.* § 31-1(a)(1), (a)(2)).    The charges alleged that, on August 6, 2024, while Aurora police officer Joel Clausing was performing his official duties, defendant ignored Clausing's orders to stop walking; struck Clausing in the face, resulting in multiple facial fractures; and then physically resisted arrest when multiple officers were taking him into custody.    The State petitioned to deny defendant pretrial release, alleging that his pretrial release posed a real and present threat to the safety of any person and the community.    725 ILCS 5/110-6.1(a)(1.5) (West 2022).    The petition further noted that defendant had previously been found guilty of misdemeanors, including disorderly conduct (case No. 07-CM-5879), driving while license suspended (case No. 13-TR-69743), and criminal damage to property (case No. 08-CM-5705).

¶ 6      That same day, the court held a hearing on the State's petition to detain defendant.    The State introduced into evidence the police synopsis from the incident at issue, as well as a thumb drive with videos from the event and photographs of Clausing's facial injuries.    According to the synopsis, when multiple officers arrived near the intersection of Parkside and Coolidge avenues to assist Clausing, defendant actively resisted and six officers ultimately overpowered him to take him into custody.    After receiving *Miranda* rights, defendant stated that Clausing fell and he did

not strike him. Defendant was smiling during the booking process, said he had done nothing wrong, and stated he would protect himself "at all costs, no matter who you are, badge or not." Clausing was transported to the hospital, with a "significantly swollen" left eye and multiple facial fractures to his orbital bone and jaw. According to the synopsis, when asked for a statement, Clausing reported he,

"observed a male matching the description from a previous call for service for a suspicious person. The male was acting suspicious and walking south and then back north again on N[orth] Farnsworth Ave. Officer Clausing approached the male, giving him multiple lawful orders to stop. The male did not stop, Officer Clausing attempted to grab ahold of the male to stop him when he suddenly struck Officer Clausing in the left side of the face."

¶ 7     The State played clipped versions of body camera footage from four officers on the evening in question, and presented three photographs of Clausing and his injuries to the court. The State argued that the video demonstrated that defendant disobeyed every order that Clausing gave him, showed no intent to follow instructions to stop in a calm manner, and escalated the incident, eventually battering Clausing. Further, the State asserted, the videos reflected that, despite the battery, defendant continued to run, had to be chased by multiple police officers, disobeyed every order given to him, and it took the efforts of several officers to eventually take him into custody. At the police station, defendant showed no remorse, stated he did nothing wrong, and that he would protect himself at all costs, "badge or not." Accordingly, the State argued the evidence demonstrated that the proof was evident and presumption great that defendant committed the charged offenses and, where he was unprovoked and punched an officer in the face causing great bodily harm, he was dangerous. While the State acknowledged defendant had only misdemeanor convictions, it posited that he nevertheless had exhibited criminal behavior and posed a threat to

anyone with whom he might come into contact. In particular, the State urged, where defendant was willing to harm an armed police officer performing his job, no condition would protect others in the community. The State argued further that electronic home monitoring (EHM) would be insufficient, as it would allow defendant to be around other individuals, either at home or during the two days of weekly free movement.

¶ 8 Defendant responded that the public safety assessment reflected that he had no prior violent convictions, was ranked two out of six on the new activity criminal scale, and had not had any failures to appear in the last two years. He argued that his criminal history was very limited, with nothing suggesting that he was a violent person, had access to weapons, or was likely to go out looking to commit acts of violence against others. Further, defendant lived with his sister and his mother, who was disabled due to mental health decline, and she was incapable of caring for herself. Defendant and his sister took turns caring for her. As to the videos, defendant noted that they reflected that he provided his address to Clausing and was cooperative with that initial question, and that he was backing away from Clausing and conversing with him; he did not go up to the officer to create a confrontation. Rather, nothing violent happened until Clausing went "hands on" and, at that point, the video was unclear as to whether there was an actual punch. "It doesn't show any hands being raised or thrown at the officer. It shows them coming together, the officer making that contact, and then them breaking apart and, of course, the officer has the injury and then [defendant] is gone." Defense counsel suggested that if Clausing had continued to converse with defendant or had called for backup, the incident might not have happened. Defendant argued that this was an isolated incident and that conditions were appropriate to mitigate any concerns, while allowing him to continue to look for work, care for his mother, and also to care for his 15-year-old child. He noted that he could be placed on EHM, which would keep him

home and monitored, not out in public interacting with police. As to the comments defendant made at the police station, defense counsel noted that defendant was in the heat of the moment and had just been arrested by six officers, and, so, the comments did not reflect defendant's true beliefs.

¶ 9 The court (Judge Salvatore LoPiccolo) granted the State's petition. The court found, based on the petition and proffered evidence, including the video clips and photographs, that the proof was evident and presumption great that defendant committed the detainable offenses. The court found that Clausing was clearly in uniform and acting in the course of his duties, making lawful commands, and "at the time that he reaches out to put hands on the defendant [he] has probable cause at that point in time to arrest the defendant for the defendant's obstructive behavior *** by refusing to follow lawful orders and the defendant's act of striking the officer in the face caused great bodily harm to the officer." The court rejected defendant's suggestion that the officer fell, finding it rebutted by the video.

¶ 10 Further, it noted that it had considered the statutory factors for determining dangerousness (725 ILCS 5/110-6.1(g) (West 2022)). It agreed that defendant's criminal history was not indicative of violent, abusive, or assaultive behavior, nor was there evidence he possessed or has access to weapons. However, defendant's actions in this particular case reflected a violent response to an officer asking him to stop and for his name. The response of striking the officer so hard he received facial fractures was not defensive and was not an appropriate response to the officer's actions. The court found that the escalation reflected defendant's display of a violent and assaultive nature to an officer trying to do his job. Further, he took off running and did not submit to other officers who were also acting in the course of their duties; instead, defendant chose not to accept their authority, listen to commands, and actively resisted. As such, the court determined that defendant posed a real and present threat to "mainly the community of police

officers. I don't have anything in the background *** to suggest that he poses a danger to other persons other than police officers because nothing in his history would suggest that."

¶ 11 Finally, the court found that no conditions would mitigate the threat, because what started as a simple encounter between a police officer and a citizen escalated into one in which an officer received facial fractures and six officers were necessary to place defendant in custody. Defendant's continued resistance and refusal to follow police orders did not lend the court to believe that any condition that it gave defendant would be followed. "[H]e has demonstrated that he's not going to conform to the laws of society, he's not going to conform to the officer's authority."

¶ 12                    B. Motion for Relief and Ruling

¶ 13 On August 13, 2024, defendant moved for relief, arguing that the evidence was insufficient to establish that he committed the charged offenses, in that the police synopsis contained inappropriate and irrelevant language, and the video from Clausing's body camera did not show a "punch or a hit but merely that the officer moved to make contact with defendant and defendant backed away after a split second interaction." Further, he argued that the evidence did not establish he was a real and present threat to any person's safety, where the State argued he was a danger to the community because he allegedly hit a police officer during a "split second interaction," but his criminal history was devoid of any violence and most statutory dangerousness factors were not present. Finally, defendant argued that the State failed to establish that no conditions could mitigate the alleged threat to the community, where he had a minimal and nonviolent criminal history, a residence in which he could remain while the case remained pending, and a family member who relied upon him for care. Further, he noted that his nonviolent criminal history and lack of prior negative incidents with police reflected that he remained capable

of positive interactions with police and, thus, that EHM and other conditions could sufficiently mitigate any threat.

¶ 14 On August 22, 2024, the court (Judge Donald J. Tegeler) heard argument, considered evidence submitted by the State in support of continued detention, and denied defendant's motion for relief. The court again considered the videos and photographs from the initial detention hearing, as well as in-person sworn testimony from Seargent Elizabeth Clausing, Joel Clausing's wife, about the extent and status of his injuries, his inability to work, numbness in his face, and his recent surgery, which included two plates, nine screws, and approximately 40 stitches in his face and inside his mouth. The State also introduced into evidence photographs of Clausing post-surgery.

¶ 15 The court rejected defendant's arguments, agreed with Judge LoPiccolo's comments and findings and adopted them, and denied the motion for relief.

¶ 16                    C. Subsequent Proceedings and Appeal

¶ 17 Defendant's detention continued upon subsequent court appearances. In September 2024, the court ordered a full psychological examination of defendant. In December 2024, that order was rescinded when defendant was granted leave to proceed *pro se* and upon his refusal to submit to examination. However, defendant was charged with two felony counts of aggravated battery and five misdemeanor counts of resisting a police officer on January 23, 2025, in Kane County case No. 25-CF-183, and, after a fitness hearing on May 6, 2025, the court found him unfit to stand trial in both the instant and the new cases. Accordingly, and also based on its own observations of defendant's mental health deterioration in court, on March 21, 2025, the court had rescinded its ruling allowing defendant to represent himself and reappointed the public defender.

¶ 18     On March 24, 2025, defendant's counsel filed a notice of appeal on his behalf, challenging the August 7, 2024, detention order, and the August 22, 2024, denial of his motion for relief.[1] The Office of the State Appellate Defender filed a memorandum on defendant's behalf pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State has submitted a memorandum opposing defendant's appeal.

¶ 19                                   II. ANALYSIS

¶ 20     Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may be denied only in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 21     We review *de novo* a detention decision where the parties relied solely on documentary evidence and no live testimony was presented to the court. *People v. Morgan*, 2025 IL 130626,

---

[1]Thereafter, appointed counsel, filed a renewed motion for relief, which the court denied on April 17, 2025. Further, according to an order attached to defendant's brief on appeal, on May 6, 2025, following the fitness hearing, defendant was placed into the custody of the Department of Human Services for treatment.

¶¶ 51, 54.   Here, no live testimony was received at the initial detention hearing; however, at the hearing on the motion for relief, the court received testimony from one witness concerning the status of the victim's injuries, which might suggest review under the manifest-weight-of-the-evidence standard.   See *id.* ¶¶ 38, 43; see also *People v. Walker*, 2025 IL App (1st) 242464-U, ¶ 10 ("While *Morgan* involved an initial petition for detention, not a continued-detention hearing, its reasoning applies equally to hearings on continued detention ***").   In any event, we need not decide which standard of review is correct because, here, the standard of review is a distinction without difference.   Under either standard, we affirm the detention decision.

¶ 22   Specifically, defendant argues first that the detention order should be reversed because the State failed to clearly and convincingly prove that he poses a real and present safety threat.   He contends that, other than the pending, unproven charges, the evidence established only that he has no prior felony convictions, no known history of violence, and he has never been convicted of a weapons offense or been known to carry a weapon.   Further, although the State argued that he posed a threat to the community and to police officers in particular, it offered no evidence that he had ever previously harmed or threatened to harm anyone, including police officers.   Defendant urges that it is important to note that, based on the video, he was backing away from Clausing and appeared afraid, and it was only when Clausing moved closer to reach him that he struck out.   He suggests that the context of the encounter, including his race and disproportionate risk of injury or death during a police encounter, escalated the situation, not his own dangerousness.   We disagree.

¶ 23   In deciding whether a defendant poses a danger, the court may consider several statutory factors including the nature and circumstances of the offense, whether the offense is a crime of violence, the identity of persons to whose safety defendant poses a threat, and statements made by or attributed to defendant, including the circumstances surrounding them.   725 ILCS 5/110-1(g)

(West 2022). Both the trial court and this court have reviewed the videos and photographic evidence. That evidence reflected that defendant continued to back away when Clausing walked towards him. However, that does not, as defendant suggests, imply that he was avoiding conflict and is not dangerous. Rather, by refusing to stop pursuant to a uniformed officer's commands, defendant heightened the tension or volatility of the encounter. When Clausing was near enough to reach defendant, defendant said, "don't touch me," there was quick movement, and Clausing then reacted in apparent pain. After striking Clausing, defendant yelled at him and ran away. The evidence, therefore, reflected that defendant did not *merely* run from Clausing or push him away, but he chose to *strike* Clausing so hard in the face that he shattered multiple bones, requiring surgery, extended loss of work, and other damages. While defendant might not have other documented history of violence, the danger reflected by the video lies in the greatly disproportionate and explosive response to a uniformed officer performing duties. Thereafter, defendant also physically struggled, requiring the efforts of multiple officers to effectuate his arrest. Further, defendant allegedly stated that he would protect himself at all costs, "no matter who you are, badge or not." Although defendant tries to cast his comments as being in the heat of the moment, the evidence reflects that he made this statement not at the scene, but later, at the police station, during booking and after receiving *Miranda* warnings. Finally, defendant claimed he did nothing wrong and professed his intent to protect himself from *anyone* necessary, "no matter who" and "badge or not," which supports a finding of defendant's dangerousness in that it suggests he would be willing to respond in a like manner against anyone in the community from whom he felt threatened. We also note that defendant has another criminal case pending, as well as prior misdemeanor convictions for disorderly conduct and damage to property, which reflect destructive behavior or conduct and/or a reluctance to conform his behavior to the law.

¶ 24    Defendant next argues that the State failed to establish by clear and convincing evidence that no condition or combination of conditions could satisfy the alleged danger.    He argues that, although the State's position is that, because he ran from officers and refused their commands, he would not comply with court-ordered conditions, the fact that he refused to follow commands in the heat of the moment did *not* mean he would not comply with court orders.    Defendant asserts that the court's conclusion would mean that no defendant charged with resisting or obstructing a police officer could ever be released on pretrial conditions.    He reiterates that he had no history of violence or of disobeying court or police orders.    Again, we disagree that the State failed to satisfy its burden.

¶ 25    Here, again, defendant argues that he should receive conditions like EHM, which would prevent incidents with the police, as he would be at home and monitored.    However, as mentioned above, defendant's statement and the severity of his response when he perceived a threat reflects clear and convincing evidence that he could react in a similar manner at home or when he is in public, even on EHM status.    Further, proper considerations for assessing whether pretrial release conditions would reasonably ensure the safety of a witness and the community include an assessment of "the *likelihood* of compliance by the defendant with all conditions of pretrial release."    (Emphasis added.)    725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).    We reject defendant's argument that a failure to obey police commands does not reflect he would not obey court commands, or that affirming the court's finding means no person charged with resisting or obstructing an officer could ever be released with conditions.    Rather, the record in *this case* demonstrates that, where defendant repeatedly refused to obey commands by *multiple* police officers in uniform, and where he demonstrated a willingness to physically strike and severely injure one of them, his demonstrated lack of respect for authority renders it unlikely that he would

comply with written court orders. Finally, again, defendant has another criminal case pending, as well as prior misdemeanor convictions, reflecting a reluctance to conform his behavior to the law.

¶ 26                                     III. CONCLUSION

¶ 27    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 28    Affirmed.

¶ 29    JUSTICE McLAREN, dissenting:

¶ 30    I write separately because I believe that this appeal is, *inter alia*, moot, advisory, or premature. As a result, I believe the appeal should be dismissed rather than affirmed. Therefore, I dissent.

¶ 31    Our jurisdiction is restricted to cases which present us with an actual controversy. *People v. Hill*, 2011 IL 110928, ¶ 6. In general, Illinois courts do not render advisory opinions, decide moot questions, or "consider issues where the result will not be affected regardless of how they decide those issues." *People v. McNally*, 2022 IL App (2d) 180270, ¶ 16 (citing *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009)). If it is apparent that a disposition "cannot affect the result as to the parties or controversy before it, the court should not resolve the question merely for the sake of setting a precedent to govern potential future cases." *People ex rel. Partee v. Murphy*, 113 Ill. 2d 402, 408 (1990). The mootness doctrine dictates that "we must dismiss an appeal when the issues involved have ceased to exist because intervening events have made it impossible for us to grant effectual relief." *Hill*, 2011 IL 110928, ¶ 6.

¶ 32    In the immediate case, we are not able to grant effectual relief. The denial of the appellant's pretrial release became moot the moment he was found unfit to stand trial and was placed into the custody of the Department of Human Services for treatment. Essentially, an intervening event precludes release. The relief appellant seeks is the vacation of the order of

detention. The appellant did not ask us to remand the matter for further proceedings on the petition to detain. Having failed to request such relief, it is not presently available. Nevertheless, we cannot give him effective relief until the issues regarding his unfitness are resolved to the extent that he remains in detention due to unfitness. The majority disposition fails to even address the fact that we cannot grant the relief sought due to the intervening act. As a result, we are undermining appellant's position by affirming the detention order without further explanation as to why, were he to seek reconsideration, the intervening act would be relevant and material to his possible release

¶ 33 The appellant claims in his memorandum that this matter is not moot and cites to *People v. Council*, 2023 IL App (5th) 230716-U for support. I submit that a fair reading of *Council* actually supports my position that this disposition is moot, advisory, and premature:

> "Upon completion of treatment, and subject to the regulatory scheme of article 104 of the Code (725 ILCS 5/104 et seq. (West 2022)), the defendant may elect to stand on his original pretrial conditions as set forth in the circuit court's order of August 16, 2023, or he may file a motion for a hearing under section 110-5(e). In light of our decision, we need not address the defendant's remaining issues on appeal." *Council*, 2023 IL App (5th) 230716-U, ¶ 18.

*Council* neither addressed mootness nor the exceptions to mootness that permit addressing the merits of an appeal. Reviewing the *Council* citation should have raised a red flag that mootness may be implicated. The appellant's citation to *Council* is inapt and the failure to make cogent argument relative thereto should refute the claim regarding mootness of appellant regarding mootness especially through forfeiture. It would have been beneficial were the majority to have

discussed mootness and explained how we may grant relief while there is an intervening event that precludes release as was ordered in the fitness proceedings.

¶ 34    However, in its memorandum, the state fails to either address mootness, respond to the immaterial citation to *Council*, or the implications of the ability to address release at a later date. Fortunately, we are not constrained by this default.   We are, however, constrained when we can't grant the relief sought unless an exception to mootness is established.   See *People v. McCoy*, 2014 IL App (2d) 130632, ¶ 11-12.

¶ 35    I submit that if there were an appeal of the finding of unfitness, we might hold this case until resolution of the fitness appeal.   Alternatively, we could handle this as the second district has handled similar cases in the past.   See *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1049– 50 (2007).   We would dismiss appellant's appeal because it is not presently ripe/justiciable.   If appellant can timely file a notice of appeal upon the resolution of the pending unfitness, and any other pending claims in this matter; then that is an appropriate resolution.   However, if pending claims have been resolved and the time to file a new notice of appeal has expired, Rule 303(a)(2) (Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017)) allows applicant to establish the effectiveness of the present notice of appeal.   In the latter event, the applicant may file a motion to reconsider and to supplement the record, thereby establishing our jurisdiction to address the merits and determine if effective relief is available.   *Knoerr*, 377 Ill. App. 3d at 1049-50.   Furthermore, the need for further detention is reviewable per the PFA.

¶ 36    I submit we should dismiss this appeal as both moot and premature subject to the hypothetical alternative resolutions I have offered.   Even if we were to reverse or vacate the PFA order, the defendant would be subject to further review under the PFA.   When the intervening action of unfitness no longer precludes release, I believe the circuit court will entertain and resolve

the issue of continuing detention under the PFA in a timely fashion. Similarly, if and when Moore is restored to fitness, or the need for further custody under the code above is unnecessary, then the formula above would be appropriate as the question might then possibly be material. At that point, the applicant may refile this appeal as he "may initiate an appeal by filing a notice of appeal in the circuit court *at any time prior to conviction.*" (emphasis added) Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024).

¶ 37 If this court cannot grant relief upon the issuance of its mandate and the immediate enforcement thereof, any suggestion of possible future relief is pure speculation, advisory, and premature. It also incorrectly presumes that the order of detention under the PFA is not subject to continuing review, reconsideration, or additional hearings as took place in these proceedings. I expect that if this case returns, the majority may realize their disposition was not efficacious.