2025 IL App (1st) 251205-U

SIXTH DIVISION

September 19, 2025

No. 1-25-1205B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23CR1579 |
| | ) | |
| TRE HAWTHORNE, | ) | Honorable |
| | ) | Kevin P. Cunningham, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

## ORDER

¶ 1    *Held:*    We affirm the ruling of the circuit court to revoke pretrial release where the Defendant was arrested for aggravated use of a weapon while on release for aggravated discharge of a firearm.

¶ 2    Appellant Tre Hawthorne appeals the circuit court's order continuing his pretrial detention under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), and Public Act 102-1104, § 70 (eff. Jan 1, 2023) (commonly referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" (Act)). On appeal, Hawthorne argues the court erred in its determination that there was no condition or combination of conditions that would reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4    On January 15, 2023, police officers responded to multiple 911 calls about shots fired around 120 Warwick Road in Park Forest, Illinois. Upon their arrival, officers discovered a Chevrolet Malibu that had crashed and observed multiple juveniles running from the vehicle. Officers interviewed one of the victims, who recalled observing the vehicle approaching the residence. Three adult males exited the residence and shot at the vehicle. Officers recovered 45 shell casings from the scene and approached the residence before arresting three defendants, including Hawthorne. Hawthorne made a post-*Miranda* statement that he knew the individuals in the vehicle, he previously had problems with them in the past, and that he did retrieve a handgun. Hawthorne was subsequently charged with three counts of Aggravated Discharge of a Firearm (ADF) (720 ILCS 5/24-1.2(a)(1) (West 2024)).

¶ 5    On January 18, 2023, circuit court judge Luciano Panici released Hawthorne on bail with special conditions, which required him to surrender his Firearm Owner's Identification (FOID) Card to the local police department and prohibited him from possessing any firearm. Following enactment of the Act on September 18, 2023, on August 29, 2024, officers pulled over Hawthorne

for a traffic stop near the corner of Western Avenue and Main Street in Park Forest, Illinois. Hawthorne was the operator and sole occupant in the vehicle. Officers observed Hawthorne had a FOID card, but it was suspended. Hawthorne also did not have a concealed carry license. While speaking to Hawthorne, officers saw cannabis residue and burnt cigars in the vehicle and asked Hawthorne to step out while they conducted a search. During the search, Hawthorne further stated the officers "seen what is in there." They then located a loaded Glock 21 handgun in the glove box, which had an extended magazine and an auto-sear device, or switch, attached. Hawthorne was arrested and subsequently charged with Aggravated Unlawful Use of a Weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2024)).

¶ 6    Following the arrest, the State filed a petition to revoke pretrial release pursuant to section 6 of the Act (725 ILCS 5/110-6 (West 2024)). The circuit court heard the petition the same day. The State proffered the events of both arrests as detailed above. The State argued that both arrests involved the possession of a firearm in either a residence or vehicle, and no conditions, including electronic monitoring, would prevent Hawthorne from being charged with a subsequent felony or misdemeanor. Furthermore, it contended electronic monitoring would not prevent him from possessing a firearm as it would allow Hawthorne two days of "unmonitored" movement.

¶ 7    Counsel for Hawthorne argued that because the State's proffer was mere allegations and since he had not missed a hearing date in the first case, pretrial release should not be revoked. Judge Panici revoked pretrial release, finding that the State showed by clear and convincing evidence Hawthorne committed AUUW while on release for his ADF charge. Furthermore, because officers found a weapon on Hawthorne while on release, the court found the State showed by clear and convincing evidence that no conditions would reasonably prevent him from committing a subsequent felony or Class A misdemeanor.  Judge Panici found electronic

3

monitoring insufficient as "[Hawthorne] is still allowed to move around, and that would not prevent him from carrying a weapon, as has been shown."

¶ 8    During a February 5, 2025 discovery hearing on the ADF charge, counsel for Hawthorne orally moved for review of the court's prior revocation order. The matter was heard by circuit court judge Kevin Cunningham. Counsel argued the State charged Hawthorne with constructive possession of the firearm, yet Hawthorne did not own the vehicle he drove at the time of the arrest. Counsel proffered Hawthorne was 20 years old, graduated from Rich Township High School Fine Arts Campus in Richton Park, and was enrolled in Prairie State College in Chicago Heights. At the time of his arrest, Hawthorne was working at Chipotle and Amazon to pay for his education. Counsel recommended electronic monitoring, highlighting that Hawthorne would be able to reside with his family, who did not live at the places where the prior incidents occurred. The State reasserted the facts as proffered in the August 2024 hearing. Judge Cunningham continued detention, finding that while the issue of constructive possession is a trial issue, detention was appropriate given the nature of both the ADF and AUUW charges.

¶ 9    Counsel for Hawthorne filed a petition for release on May 28, 2025, arguing the State did not show he possessed knowledge of the weapon inside the vehicle at the time of arrest, nor did they show lesser conditions such as electronic monitoring would alleviate any risk of him committing a subsequent felony. Judge Cunningham heard the petition on June 11, 2025. Counsel argued because the vehicle involved in the August 2024 arrest belonged to Hawthorne's brother, the evidence as presented in the case is insufficient for the State to show there are no conditions to prevent Hawthrone from committing a subsequent felony. In its proffer, the State noted while the vehicle belonged to Hawthorne's brother, Hawthorne stated he made the payments on the vehicle and drove it on a regular basis. The State further argued electronic monitoring would not be proper

4

as Hawthorne was alleged to be in possession of a weapon without a valid FOID card and in violation of his previous conditions of release.

¶ 10    Judge Cunningham denied the petition.  He noted Hawthrone's statements relating to both the contraband and ownership of the vehicle,  created a "strong constructive possession case." Because the August 2024 arrest occurred while on release for the ADF charge, Judge Cunningham found continued detention was appropriate. This appeal followed.

¶ 11                                    JURISDICTION

¶ 12    As a preliminary matter, we address which orders this court has jurisdiction to review. In his notice in lieu of memorandum, Hawthorne states he is appealing the following orders: (1) the August 29, 2024 order revoking pretrial release; (2) the February 5, 2025 order continuing detention; and (3) the June 11, 2025 order denying his petition for release. A reviewing court has an independent duty to consider issues of jurisdiction, as it is a threshold issue that must be addressed before considering an appeal's merits. *Village of Kirkland v. Kirkland Properties Holdings Company, LLC I*, 2023 IL 128612, ¶ 38. Illinois Supreme Court Rule 604(h) allows a defendant to appeal an order revoking or denying pretrial release. *People v. Cline¸* 2023 IL App (5th) 230849, ¶ 18. The Rule requires the defendant to first present a motion for relief to the circuit court, and upon disposition, may initiate the appeal by filing a notice of appeal at any time prior to conviction. Ill. Sup. Ct. R. 604(h)(2), (3) (eff. Apr. 15, 2024).

¶ 13    Here, Hawthorne filed his petition for relief on May 28, 2025, challenging both the circuit court's August 29, 2024 and February 5, 2025 orders. The circuit court disposed of the petition on June 11, 2025. He filed his notice of appeal on June 25, 2025. At the time of filing his notice of appeal, Hawthorne was not convicted of ADF. Thus, the notice was timely, and this court has

jurisdiction. See 725 ILCS 5/110-6(a), 110-6.6 (West 2024); Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024).

¶ 14                                                    ANALYSIS

¶ 15    On appeal, Hawthorne reasserts the arguments presented in his May 28, 2025 petition. Specifically, the state failed to show by clear and convincing evidence that he committed the offense of AUUW and that no condition or combination of conditions could prevent him from being charged with a subsequent offense. Specifically, Hawthorne claims the State failed to show by clear and convincing evidence that he committed AUUW as it failed to show he possessed knowledge of the firearm's existence in the vehicle.

¶ 16    Upon its enactment, the Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 17. Any person previously released on bond shall be allowed to remain on pretrial release under the terms of their original bail bond; however, if there is an alleged violation of those terms, the court shall follow the procedures for revocation of pretrial release under section 110-6 of the Code. 725 ILCS 5/110-7.5(a), (c)(5) (West 2024).

¶ 17    Under section 110-6(a) of the Code, when a defendant has previously been granted pretrial release, it may be revoked only if he is charged with a felony or Class A misdemeanor that is alleged to have occurred during his pretrial release. 725 ILCS 5/110-6(a) (West 2024). The defendant's pretrial release may only be revoked after a hearing on the circuit court's own motion or upon the filing of a verified petition by the State. *Id*. The State bears the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. *Id*. Following revocation, at each

subsequent appearance of the defendant before the circuit court, the court must find that continued detention is necessary to reasonably ensure the appearance of the defendant for later hearings or to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. 725 ILCS 5/110-6(j) (West 2024).

¶ 18    On appeal, when the parties to a pretrial detention hearing proceed solely by proffer, this court reviews *de novo* the circuit court's ultimate detention hearing under section 110-6.1. *People v. Morgan*, 2025 IL 130626, ¶ 54. In light of their similar language and purposes, the same standard of review for orders revoking pretrial release under section 110-6 is the same as those ordering detention under section 110-6.1. See *People v. Taber*, 2025 IL App (2d) 240562, ¶ 14.

¶ 19    In his notice in lieu of a memorandum, Hawthorne stands on his May 28, 2025 petition for relief and his June 25, 2025 notice of appeal. In his petition, Hawthorne asserts that the State failed to show he possessed knowledge of the firearm's existence in the vehicle. However, section 110-6 does not require the State to prove knowledge of a weapon on a petition to revoke pretrial release. During a revocation hearing, the court may consider all relevant circumstances, including, but not limited to, the nature and seriousness of the violation or criminal act alleged. 725 ILCS 5/110-6(a) (West 2024). Yet the plain language of section 110-6 only requires the State to prove one element on a petition to revoke pretrial release – that there are no conditions aside from detention that can reasonably ensure the defendant's appearance for later hearings or prevent him from being charged with a subsequent offense. This is a lower threshold compared to the requirements to deny pretrial release under section 110-6.1. *People v. McClure*, 2024 IL App (5th) 240027, ¶ 26. For example, section 110-6.1(e)(1) requires the State to show by clear and convincing evidence the proof is evident or presumption great that the defendant committed AUUW on a petition to deny pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). However, section 110-6(a) does not require the same.

See *People v. Coe*, 2024 IL App (5th) 240976, ¶ 35 ("nothing in [the section] requires the State to provide clear and convincing evidence that defendant committed each element of the subsequent charge.")

¶ 20 Here, the circuit court granted Hawthorne pretrial release on his ADF charge in 2023. As a result of this charge, his FOID card was suspended. One year and eight months later, officers arrested Hawthorne and charged him with AUUW. The arrest occurred when officers searched the vehicle after seeing cannabis residue and found a handgun inside the glove compartment. At the time of the incident, Hawthorne was the only occupant of the vehicle and had a suspended FOID card. While the vehicle is not registered to Hawthorne, he stated he made payments on it. During his arrest, Hawthorne further stated the officers "seen what is in there." This statement could have been in reference to the cannabis residue, the firearm, or other unknown items. Assuming this statement was not in reference to the firearm however, the remaining facts proffered show that the firearm was in the glove compartment of a vehicle that was at the time solely operated and occupied by a person with a suspended FOID card. Both arrests occurred in the same area of Park Forest.

¶ 21 At the circuit court, and in their response on appeal, the State argues that electronic monitoring would allow Hawthorne two days of unfettered movement. Yet as this court has found, the plain language of the Illinois Electronic Monitoring and Home Detention Law does not state a defendant is not being monitored. See *People v. Mitchell*¸ 2024 IL App (1st) 240730-U, ¶ 23, See also *People v. Griffin*, 2025 IL App (1st) 250589-U, ¶ 22-23.  However, Judge Pancini's ruling in revoking pretrial release highlights the limitation electronic monitoring would have in preventing Hawthorne from accessing a firearm either in his residence or a vehicle. Unlike in *Mitchell*, the court does not incorrectly assert that Hawthorne would be unmonitored. The ruling here is akin to

*People v. Smith*, 2025 IL App (1st) 242490-U, ¶ 18-19, where this court noted comments as to the effectiveness of electronic monitoring to prevent a defendant from illegally possessing a firearm show its understanding of the nature of electronic monitoring. We find the court did not err in revoking Hawthorne's release on August 29, 2024.

¶ 22  We now turn our attention to Hawthorne's subsequent appearance on February 5, 2025. Following revocation of pretrial release, section 110-6(j) of the Act requires the court to find that continued detention is necessary to reasonably ensure the appearance of the defendant for later hearings or to prevent him from being charged with a subsequent felony or Class A misdemeanor. 725 ILCS 5/110-6(j) (West 2024). It is always the circuit court's obligation to continue to review the necessity of continued detention under the Act. *People v. Walton*, 2024 IL App (4th) 240541, ¶ 22. However, for relief under section 110-6(j), a defendant must present the court with new information or a change in circumstance. *Id*. ¶ 28. There will likely be no reason for the court to revisit a decision to detain unless circumstances have changed or new information has come to light. *Id*. ¶ 29. While *Walton* highlights the defendant's obligation to provide new information should they seek review of a prior detention order, the question becomes how the court should view this new information in determining if continued detention is necessary under section 110-6.

¶ 23  This court has previously found for subsequent appearances after a court denied pretrial release, the circuit court begins with the premise that detention was necessary and then asks whether anything has changed such that detention is no longer necessary. *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. While *Thomas* reviews subsequent appearances for matters where pretrial release was initially denied, the similar language and purposes in section 110-6 and 110-6.1 require us to apply the same standard of review for when release was revoked. *Taber*, 2025 IL App (2d) 240562, ¶ 14.

¶ 24   We find the facts in this case mirror *People v. Walker*, 2025 IL App (1st) 242464-U. In *Walker*, the circuit court denied the defendant pretrial release following an incident where he allegedly pointed a gun at the victim before the victim attempted to grab it away, leading to several shots fired. *Id*. ¶ 4. At a subsequent appearance, the defendant proffered that if released, he could live with his mother who worked from home and would be able to supervise him and ensure he attended school. *Id*. ¶ 5. The circuit court expressed concerns about allowing the defendant movement to attend school and ultimately continued detention. *Id*. On appeal, this court ruled the question under *Thomas* becomes whether the new information presented at a subsequent hearing undermined the conclusion that detention remained necessary. *Id*. ¶ 11. Applying *de novo* review, this court affirmed the circuit court, noting that defendant's mother still lived in the same community where the offense occurred. *Id*.

¶ 25   Here, during the hearing on February 5, 2025, Hawthorne asserted if the court granted him release on electronic monitoring, he had a place to stay with his family that would not be where the previous incidents occurred. This was a change in conditions to where he previously argued for electronic monitoring on August 29, 2024, where counsel merely stated he was never previously on electronic monitoring. However, the information presented is weaker than that in *Walker*¸ as counsel did not provide any details to the circuit court as to who would supervise him, ensure he would continue his schooling, or whether he would be in the same community where the offenses occurred. While counsel highlighted Hawthorne's potential electronic monitoring would not be in the same locations where the prior arrests occurred, this information was not sufficient to state detention was no longer necessary in light of the nature of his charges. We find the circuit court did not err in determining continued detention was necessary.

¶ 26                              CONCLUSION

¶ 27   The judgment of the circuit court is affirmed.

¶ 28   Affirmed.